O. B. BYNUM v. ELSIE CLAY MCDOWELL et al.

Eastern Section.　October 22, 1926.

No petition for Certiorari was filed.

1. **Wills. Estates. Will held to create a qualified fee.**
Where testatrix by her will devised property to a son, and by a codicil to her will, provided that if her daughter should be left a widow, the daughter should share equally with the son, held that the will created a fee simple but that the codicil reduced the fee simple title to a base or qualified fee and the daughter was entitled to share in the property if at any time she should be left a widow.

2. **Wills. Construction.**
In order to ascertain the intention of the testatrix the court may look to the evidence disclosing the situation, circumstances and environment of the testatrix and her family and the size and character of her estate, but the intention must be that which is spoken by the words of the will.

3. **Boundaries. Quantity may be resorted to for locating the land described.**
The rule of law is well settled that the call for quantity may be resorted to for the purpose of making that certain which otherwise would be uncertain.

4. **Wills. Boundaries. Quantity held to govern the description.**
Where testatrix devised certain land to her daughter, describing it as "a large building lot on the east of my home from the east fence to the Parvin lot and back, taking in in all ten or fifteen acres," and where the evidence showed that a strip of land extending between the east and west boundaries and to the rear of her property would include about thirty acres, held that the call for quantity must govern, and the intent of the testatrix was to devise fifteen acres of land between the two boundaries and not a strip entirely through her property.

5. **Wills. Construction. Words must be construed by reference to associated words.**
Where testatrix divided her farm and its stock and furnishings into five equal parts, leaving one share to her husband "and the balance to be equally divided between her children" and it was sought to construe the word "balance" as a residuary bequest, held that the word must be construed in relation to the sentence in which it was found and it referred only to the balance of the farm and stock and not to her other property.

6. **Wills. Presumption against intestacy.**
The common-law presumption against intestacy (codified in Shannon's Code, section 3927), will not pass property not named in the will, which will contained only devises and bequests of specified property, where there are no contextual words indicating an intention to include property not specifically mentioned.

**7. Wills. Presumption against intestacy held not to apply.**

Where lumber had been cut from the land after the will was written and before the death of the testatrix thus converting it into personal property and where there were no words in the will which by fair interpretation or allowable implication would embrace the personalty into which the timber had been converted, held that such personalty did not pass under the will.

**8. Judgment. Res adjudicata.**

The plea of res adjudicata will not lie where the parties to the action or the cause of action are not the same in both cases.

**9. Executors and administrators. Allowance of attorney fees.**

In an action brought by an heir to recover rights under the will of his mother where it was necessary to have the will construed, held that the complainant under such circumstances is acting in his own behalf and is not entitled to an allowance for attorney fees for the construction of the will.

**10. Partition. Partition defined.**

A partition is a separation by the joint owners or tenants in common of their respective interests in land and setting apart such interests so that they may enjoy and possess the same in severalty.

**11. Partition. The establishing of a disputed boundary line cannot be considered as partition.**

Where land is left to two parties by a will and a suit is brought to establish the division line, held that such a suit is not a partition suit and an attorney's fee cannot be allowed.

**12. Wills. Construction of codicils.**

Where testatrix by her will left her home place to her son and by her first codicil gave a part of it to her daughter and by her second codicil gave the daughter an interest in the whole farm if she should be left a widow, held that the second codicil did not revoke the first but merely imposed a limitation upon the property devised by her will.

**13. Appeal and error. A litigant cannot assume in the appellate court a position different from that which he assumed at the trial.**

A litigant who has taken a particular position deliberately in the course of litigation, without mistake induced by the opposite party, must act consistently with it.

**14. Wills. The language of a will written by a party unfamiliar with legal terms will be construed liberally, and not technically.**

Where a will bears the earmarks of having been drawn by a layman and not by a lawyer, the court in the endeavor to arrive at the intention of the testatrix will not view the language technically but liberally and with reference to its popular meaning.

**15. Words and phrases. Revert defined.**

Revert means to return or turn back, and its legal or technical signification is for property to return or go back to a person who formerly owned it, but who parted with the possession or title to it by creating an estate in another and it applies to personal as well as real property.

**16. Wills. In wills the words "revert" is sometimes construed as meaning "go."**

In construing a will written by an uneducated testatrix held that the word "revert" was used as meaning "go to."

**17. Life estates. A life estate may be created in personal as well as in real property.**

It is now well settled that interests for life and in expectancy, by analogy to estates, can be created in personal as well as in real property.

Future interests or quasi-remainders, operating in analogy to remainders or executory devises, may be created in money and other personalty, and they may be created by either deed or will and without the intervention of a trustee.

**18. Life estates.  Steers held to be property in which a life estate could be created.**

Where testatrix devises her farm and the stock and implements to her husband for life and then to her children, held that steers on the place at the time of her death passed under this clause of the will, the husband taking a life estate.

**19. Life estates.  Steers held not to belong to the class of property designated as "consumable in its nature."**

In an action where it was insisted that steers should be classified as property which is consumable in its nature and that no life estate could arise in them, held that they did not belong to this class of property and that a life estate could be created in them.

**20. Wills.  A bequest giving unlimited power to the first taker to dispose of the property will destroy a remainder limited thereon.**

It is an established rule that an unlimited power of disposition in the first taker of a bequest of personalty will destroy a remainder limited thereon. but the unlimited power of disposition must be given by the will and cannot arise as a mere incident to the estate devised.  In the present case held that the will did not create an unlimited power of disposition.

**21. Wills.  A trustee is not necessary to create a life estate in personalty.**

Where the property is given for life and no trust is created, the beneficiary has a right to the possession of the corpus of the property without the intervention of a trustee.

**22. Limitation of actions.**

An action by a remainderman against the heirs of a life tenant is not governed by sections 4012, 4481 and 4451, Shannon's Code.

Appeal from Chancery Court of Hawkins County; Hon. J. H. Wallace, Chancellor.

Affirmed in part and reversed in part.

Susong, Susong & Parvin, of Greeneville, and R. C. Coleman, of Rogersville, for appellant.

H. E. Portrum, of Rogersville, for appellee.

FAW, P. J.  Mrs. Nannie B. Clay, a lifetime resident of Hawkins county, Tennessee, died at her home in Rogersville on June 10, 1916, leaving a will, which was probated on June 22, 1916, by which she disposed of a valuable estate.  Mrs. Clay was twice married.  Her first husband was John Gray Bynum, by whom she had one child, the complainant below, Orville Bradley Bynum.  Her second husband was Captain H. B. Clay, by whom she had three children, viz: Elsie Clay (now Elsie Clay McDowell), Harry B. Clay, Jr., and Mary Clay (now Mary Clay Kenner).  Mrs. Clay's husband and four children as above named survived her, but Captain Clay and his son H. B. Clay, Jr., died before this suit was brought on February 25, 1922.  H. B. Clay, Jr., died on April 30, 1917, and Captain H. B. Clay died intestate on February 27, 1919.  H. B. Clay, Jr., left

surviving, as his sole heir at law, a daughter, Mary, now Mary Clay Jackson. Mrs. Elsie Clay McDowell is the wife of Judge H. C. McDowell, United States District Judge for the Western District of Virginia, but she has no children. Mrs. Mary Clay Kenner is the wife of W. D. Kenner, of Hawkins county, Tennessee, and has several children and grandchildren. The complainant O. B. Bynum married after the death of his mother and died very shortly after the entry of the final decree in this case, leaving a widow, Mary Harris Bynum, and an infant son, John Gray Bynum, surviving. All the persons above named, except those mentioned as having died prior to the filing of the bill, are parties to this suit. R. C. Coleman was appointed and qualified as administrator of the estate of the complainant O. B. Bynum, and the suit was revived in his name and on behalf of the widow and heir at law of complainant O. B. Bynum. The case is before this court on the appeal of the defendants Elsie Clay McDowell, Mary Clay Jackson and Mary Clay Kenner,—the latter appealing in her own right and as administratrix of the estate of H. B. Clay, Sr.; and it is also here upon a writ of error sued out by Mrs. Mary Harris Bynum, as the regular guardian of John Gray Bynum and in her own right as widow of O. B. Bynum, and by R. C. Coleman, administrator of the estate of O. B. Bynum, deceased.

The will of Mrs. Nannie B. Clay is an informal document, written by the testatrix and probated as a holographic will, and is, in words and figures, as follows:

"December 9th, 1914,
"Rogersville, Tenn.

"I wish my son O. B. Bynum to have my home in Rogersville including all the land belonging to it and all the furnishings in the house and out that belong to me. Then I wish my farms with all their stock and furnishings to be divided into five equal parts, leaving one to my husband H. B. Clay to revert at his death to my children or their heirs, & the balance to be equally divided between my four children O. B. Bynum, Harry B. Clay, Jr., Elsie Clay McDowell, & Mary C. Kenner each share to be held in trust for the benefit of their heirs and in no way subject to any debts they may owe now or in the future.

"In case of no offspring such share at the death of the holder to revert to the remaining heirs.

"Request that the farms and furnishings should not be divided for the term of two years after my death, then if unsatisfactory the aforesaid division to be made.

"Dec. 9th, 1914.
"Nannie B. Clay.

"Jan. 11, 1915.

"I want my daughter Elsie Clay McDowell to have the large building lot on the East of my home from the East fence to the Parvin lot & back taking in in all ten or fifteen acres.

"N. B. Clay.

"If my daughter Elsie Clay McDowell should be left a widow I wish her to share equally with my son O. B. Bynum in my home and property at Rogersville.

"N. B. Clay.

"I want my husband H. B. Clay to have a home at my house here at Rogersville as long as he may want it.

"N. B. Clay.

"If Elsie Clay McDowell or O. B. Bynum my aforesaid daughter and son should die without heirs they can will their parts as they please.

"N. B. Clay."

It is seen that an executor was not named in the will, and no one qualified as executor thereof.

At the date of her will and at the time of her death Mrs. Clay was the owner of two large farms, aggregating about two thousand acres, known as "Oakwell" and "Solitude," respectively, lying on opposite sides of Holston River, partly in Hawkins county and partly in Sullivan county, and about twenty miles from Rogersville. At the time of Mrs. Clay's death there were upon her farms 439 grazing steers and some cows, calves, hogs, work stock and farming implements.

Mrs. Clay was also the owner, at the date of her will and at the time of her death, of a large and handsomely furnished residence which was then, and had been throughout her married life, her home, and which was situated on a tract of 51.744 acres of land in the east end of the town of Rogersville, and fronting on the north side of Main street in said town and running back northward from Main street to the foot of a mountain.

Some time during the winter of 1914-1915, and after the date of her will, Mrs. Clay sold a quantity of timber from her farms for which she received $8,500. Then, on or about July 9, 1915, Mrs. Clay sold timber to the amount of $49,000 from her farms, for which she received $10,000 in cash and the purchaser's notes for $39,000.

Mrs. Clay was stricken with paralysis on May 16, 1916, and thereafter was not able to speak or attend to any business matters.

The timber notes above mentioned ($39,000), and certain certificates of deposit in a Rogersville bank which represented a part of the cash received for the aforesaid timber sold, were in possession of Mrs. Clay at the time of her death, and one of the questions in this case is whether Captain Clay took said notes and cash in bank jure mariti or same passed under the will of Mrs. Clay to her four chil-

dren. Another question in the case, sharply litigated between complainant O. B. Bynum and the defendant Mrs. Elsie Clay McDowell, concerns their relative rights and interests in the home place at Rogersville.

There is also a controversy between O. B. Bynum on the one hand and the two daughters and granddaughter of Captain Clay on the other hand as to whether Captain Clay took the 439 grazing steers jure mariti, or said steers passed under the will as a part of the "stock and furnishings" of the farms.

The Chancellor's findings of fact and law upon the litigated questions presented by the pleadings and proof will be seen from his decree entered in the cause, which is in words and figures as follows:

"This cause was heard by the Chancellor upon the record at large and upon the record of the case of J. Fred Johnson, Trustee, v. Nannie B. Clay et al., formerly pending in this court, Rule Docket No. ———, offered and read in evidence by the defendants, and from all of which the court is of the opinion and doth decree as follows, to-wit:

1. Upon a proper construction of the will of the late Nannie B. Clay, deceased, she died intestate as to all her personal estate save that specifically mentioned in the will, namely; 'all the furnishings in the house and out that belong to me' at the home place in Rogersville and all the stock and furnishings of the farm; the court being of opinion that the word 'balance' used in the second clause of the will of the testatrix has reference to the farms and their stock and furnishings and not to her personal estate generally.

It results, and is accordingly decreed, that as to all personal property owned by the testatrix, save that indicated, she died intestate, and the same upon her death passed to her surviving husband, H. B. Clay, Sr., jure mariti.

2. The court finds and decrees that there were upon the farms at the time of the death of the testatrix 439 grazing cattle, which according to the usual course of the conduct of the farms were to be marketed in the fall after her death; that these cattle were the property of the testatrix and were so treated by the family, including H. B. Clay, surviving husband, after the death of the testatrix, and that H. B. Clay, surviving husband, under the will took only a life estate in one-fifth interest in these cattle and their proceeds. The court further finds and decrees that these cattle were sold in the fall after the death of the testatrix for the net sum of $37,024.54; that the fair value of these cattle at the time of the death of Mrs. Clay was the sum of $33,512.50, and that the net value of the fund coming to Captain Clay's hands therefrom, as representing his one-fifth interest therein, in which he took a life estate, was the sum of $6,702.50, and that upon the death of Capt. H. B. Clay the complainant Bynum

was entitled to be paid as remainderman under the will, from the proceeds of Capt. Clay's estate, one-fourth this sum, or the sum of $1,675.62. And the court is further of opinion and so decrees that the complainant is entitled to recover that sum from the defendants in this action, with interest thereon from August 27, 1919, or a period of six months after the death of Capt. Clay.

The court finds and so decrees that upon the death of Capt. Clay the defendants, his children and heirs at law, undertook to and did, through the defendant Mary Clay Kenner, their designated agent, administer the great bulk of said estate without the due appointment of an administrator, and that while thus proceeding something like $28,000 of an aggregate estate of $32,000 was so administered and disbursed among the heirs at law; that Mary Clay Kenner was eventually and on December 18, 1919, appointed administrator of the estate in order that certain war stamps owned by the intestate might be converted into money. And upon these facts the court holds and decrees that the complainant is entitled to recover from all the defendants that part of the proceeds of said cattle due him as hereinbefore decreed.

It is accordingly, therefore, further decreed that the complainant O. B. Bynum have and recover of the defendants Elsie Clay McDowell, Mary Clay Kenner and Mary Clay Jackson the sum of $2,186.87 (as between them to be paid one-third by each but a joint decree in favor of the complainant as against all), representing the value of his remainder estate in the said 439 grazing cattle, with interest from six months after the death of Capt. Clay, which upon the death of Capt. H. B. Clay should have been turned over and delivered to him by those parties taking charge of and undertaking to administer his estate.

3. The court holds and decrees that upon a proper construction of the will of Nannie B. Clay, the complainant, O. B. Bynum, took an estate in fee simple in that part of the home place in Rogersville devised to him subject alone to the contingency of a sister. the defendant Elsie Clay McDowell, being left a widow, as provided in the second codicil to the will. Construing this second codicil, the court holds that the rights given the said Elsie Clay McDowell thereunder are not contingent upon the death of her husband leaving her a widow in the lifetime of the testatrix, but the phrase 'if my daughter the said Elsie Clay McDowell should be left a widow,' means the death of her husband at any time leaving her surviving as his widow. Inasmuch as that contingency may never happen, the court does not undertake to adjudicate the question of just what rights the said Elsie Clay McDowell under the second codicil of the will will take in said property in the event of her being left a widow.

To the action of the court in thus construing said will, and in not holding and decreeing that complainant under that clause of the will devising him the home place or a part thereof took the absolute and fee simple estate therein free from any right of Mrs. McDowell therein or thereto, complainant excepts.

4. Construing the first codicil to the will, the court holds and decrees that the said Elsie Clay McDowell takes thereunder all that part of the home place in Rogersville lying east of a line beginning at a point on Main street in the hedge fence and running thence on the degree of said hedge fence, towit: North 30 degrees 45′ West to the back line of the property, and containing 30.211 acres, and that part of the property devised O. B. Bynum in the first clause of the will upon which the residence and other outbuildings are situated is a tract lying to the west of the line last above mentioned and containing 21.533 acres; and to the action of the court in thus holding and decreeing complainant excepts.

5. Other questions of construction of the will of Nannie B. Clay, deceased, were by consent of all parties withdrawn from consideration by the court at this time, and no adjudication is therefore made with respect thereto.

6. It is adjudged that one-half the costs of the cause be paid by the complainant O. B. Bynum and ......................., surety on his prosecution bond, and that the other one-half thereof be paid by the several defendants, Mary Clay Kenner, Mary Clay Jackson and Elsie Clay McDowell. There will be taxed and paid as costs a fee of $50 to R. C. Coleman, guardian ad litem for the minor John Gray Bynum, and a like fee to A. D. Huffmaster, guardian ad litem for the other minor defendants.

Upon the court's announcing the foregoing conclusions, counsel for the defendants moved the court to order a reference to ascertain whether in conducting the farming operations after the death of Nannie B. Clay and prior to his death, Capt. H. B. Clay had expended in such operations a sum in excess of the amount coming to his hands from the farms and disbursed to himself and the parties entitled thereto; that is to say, whether the complainant O. B. Bynum and the defendant heirs of Capt. Clay were as a result of the farming operations indebted to the said Clay at the time of his death, and if so, in what amount. The court denied this motion and refused to order the reference requested, to which action of the court the defendants excepted.

On the trial of the cause the defendants read in evidence the deposition of Mary Clay Kenner, Elsie Clay McDowell and J. M. Crawford, taken on behalf of the complainant.

Complainant moved the court for an allowance of counsel fees to be taxed as cost for the services performed by his counsel in this

cause in procuring a construction of the will of Nannie B. Clay as herein decreed by the court, and which motion the court disallowed, holding that complainant is not entitled to have fees for such services taxed and paid as cost; and to which action of the court complainant excepts.

All exceptions noted in the depositions read in the cause were brought to the attention of the court and made on the hearing of the cause. The court heard the evidence subject to such exceptions, but deeming it unnecessary to rule upon said exceptions did not do so.

Upon application of J. A. Susong and Phillips & Hale, solicitors for the complainant, O. B. Bynum, a lien is declared in their favor upon the recovery hereinbefore awarded the said Bynum to secure to them the payment of their reasonable fees for their services in his behalf in the cause.

As to the defendant, W. D. Kenner, the court dismisses the original bill, it appearing that he did not have any connection with the administration de son tort of the estate of H. B. Clay, deceased.''

The first, fourth, and certain parts of the third and sixth paragraphs of the foregoing decree are challenged by the complainant's assignments of error filed in this court; and the second paragraph of said decree is challenged by the defendants' assignments of error.

Through their first assignment of error the complainants (there being three complainants since the death of O. B. Bynum and the revivor below) assert that the Chancellor erred in holding that Mrs. Elsie Clay McDowell takes, under the first codicil of the will of Mrs. Clay, 30.211 acres of the home tract, as set out in the fourth paragraph of the decree before quoted; and through their second assignment they complain of the Chancellor's ruling (in the third paragraph of his decree) that O. B. Bynum took that portion of the home place of testatrix devised to him subject to the contingency of Mrs. McDowell being left a widow.

In support of their second assignment of error just mentioned, complainants seek to apply to the second codicil of Mrs. Clay's will the rule that ''if there is an immediate gift to A, and a gift over in case of his death, or any similar expression implying the death to be a contingent event, the gift over will take effect only in the event of A's death before that of the testator.'' Katzenberger v. Weaver, 110 Tenn., 620, 630, 75 S. W., 937; Vaughn v. Cator, 85 Tenn., 302, 2 S. W. 262; Meacham v. Graham, 98 Tenn., 190, 207, 39 S. W., 12; Frank v. Frank, 120 Tenn., 569, 575, 111 S. W., 1119; Scruggs v. Mayberry, 135 Tenn., 586, 596, 188 S. W., 207; Hoggatt v. Clopton, 142 Tenn., 184, 193, 217 S. W., 817.

But the rule just stated has its foundation in the fact of ''the testatrix having applied terms of contingency to an event of all others the most certain and inevitable, and to satisfy which it is necessary

to connect with death some circumstance in association with which it is contingent." 2 Jarman on Wills (6th Ed.), Star page 1564; 110 Tenn., p. 629.

In the present instance, the testatrix has not applied terms of contingency to a certain and inevitable event. Mrs. McDowell may never "be left a widow;" hence, the reason for the rule which complainants seek to apply to the second codicil of Mrs. Clay's will is not present, and if Mrs. McDowell is "left a widow" at any time she will be entitled to share equally with O. B. Bynum in the "home and property" mentioned in the second codicil.

It is quite clear that in the body of the will (excluding the codicil) the testatrix devised the whole of the home place in Rogersville to her son O. B. Bynum in fee simple absolute. It is equally clear that the testatrix intended, by the first codicil, to carve out of the home tract a "large building lot" (the area of which is in dispute) and devise same to her daughter Elsie Clay McDowell in fee simple absolute. Then, in our opinion, the testatrix, by the second codicil, reduced the fee simple title thus vested in O. B. Bynum and Mrs. McDowell, respectively, to a base or qualified fee by imposing thereon the contingency that if Mrs. McDowell should be left a widow, she and O. B. Bynum should share equally in the home and property of the testatrix at Rogersville.

It is argued that it would be extremely unfortunate for the title to the Rogersville property to be "tied up" by a contingency such as the possible widowhood of Mrs. McDowell; but whether or not the testatrix used good judgment in the disposition of her estate is not a matter for the court to decide. We see nothing in the provisions of Mrs. Clay's will touching the Rogersville property which conflicts with established rules of law or public policy. In this situation, it is axiomatic that the intention of the testatrix must determine the construction of the will. Hoggatt v. Clopton, 142 Tenn., 184, 193, supra; 28 R. C. L., pp. 211-214, par. 173.

In order to ascertain this intention the court may look to the evidence disclosing the situation, circumstances and environments of the testatrix and her family, and the size and character of her estate, etc. Ensley v. Ensley, 105 Tenn., 107, 58 S. W., 288.

"But this intention can only be learned from the words used in the will. Indeed, it may appear morally certain that the testator may have, in his mind, intended a certain thing, but unless he has expressed that intention, either by writing it in his will in express terms or by necessary implication and construction, it cannot prevail. The question is not what the testator intended in his mind, but what is the meaning of his words and his intention as shown by them." Fox v. Fox, 102 Tenn., 77, 85, 50 S. W., 765.

"The intention of the testator which is to be considered in the interpretation of his will is the intention spoken by the words of the will, where he has so spoken as to disclose his intention, and not the intention to be deduced from speculation, etc." Compton v. Barbour (Va.), 5 A. L. R., 465, 467. See, also, 28 R. C. L., pp. 214-215, par. 174.

We think that the provisions of Mrs. Clay's will, including the codicils, with respect to the Rogersville property, may, without doing violence to her intention, as "spoken by the words of the will," be paraphrased as follows:

I devise and bequeath to my son O. B. Bynum my home place in Rogersville containing 51.744 acres, and all the furnishings on said place that belong to me, both in the house and out; with the exception of the large building lot on the east of my home from the east fence to the Parvin lot and running back far enough to take in in all ten or fifteen acres, which ten or fifteen acres I devise to my daughter Elsie Clay McDowell, but the foregoing devises of separate parts of my home place to my son O. B. Bynum and my daughter Elsie Clay McDowell, respectively, are subject to two contingencies, viz: (1) that if my daughter Elsie Clay McDowell should at any time be left a widow, then, in that event, she and my son O. B. Bynum shall share equally in my home and entire property (51.744 acres) at Rogersville, and (2) that my husband H. B. Clay shall have a home at my house at Rogersville as long as he may want it.

As indicated in our foregoing paraphrase of the will, we do not agree with the learned Chancellor in that part of his decree (the fourth paragraph) wherein he holds that, under the first codicil of Mrs. Clay's will, Mrs. Elsie Clay McDowell takes 30.211 acres of the home place of testatrix.

The language of the first codicil is as follows: "I want my daughter Elsie Clay McDowell to have the large building lot on the east of my home from the east fence to the Parvin lot & back taking in in all ten or fifteen acres."

An admittedly correct plat or map of the "home place" of testatrix is in the record. There is no dispute about the location of the "East fence" and the "Parvin lot" mentioned in the first codicil, and it is agreed that the lot intended to be devised by the first codicil fronts on Main street.

It is contended on behalf of Mrs. McDowell that the words "& back" mean that the lot devised by the first codicil shall extend from Main street to the northern boundary line of the property (a distance of more than two thousand feet), and that the testatrix was under the mistaken impression that the boundary thus defined contained only ten or fifteen acres. We are not satisfied that Mrs. Clay believed that the part of her home tract lying east of a line running

on the degree of the hedge fence contained only ten or fifteen acres. If she had intended that Mrs. McDowell's lot should extend to the northern boundary line of the entire tract, and had thought that the space east of the line of the hedge fence contained only ten or fifteen acres, it is not at all probable that she would have added the words "taking in in all ten or fifteen acres." The words just quoted convey the idea of carving a parcel containing ten or fifteen acres out of a larger parcel or tract.

The western, southern and eastern boundary lines of the large building lot devised in the first codicil are known, and a straight line will "close the hiatus" on the north (Johnson v. Covington, 148 Tenn., 47, 59-60, 251 S. W., 893); hence, the quantity named becomes important as a matter of description. "The rule of law is well settled that the call for quantity may be resorted to for the purpose of making that certain which otherwise would be uncertain." Davis v. Hess, 103 Mo., 31, 36.

The number of acres named is sometimes the matter of description which locates and identifies the land. Carter v. Barnes, 26 Ill., 454; Harris v. Byers, 112 Miss., 651; Soukup v. Union Investment Co., 84 Iowa, 448, 35 Am. St. R., 317, 319; Wing v. Red (Texas), 145 S. W., 310; Brodsky v. Nelson, 57 Wash., 671; Davis v. Hess, supra.

It is said that the phrase "ten or fifteen acres" is too indefinite and uncertain to suffice for matter of description. We think not, for the reason that "the general rule is, that of everything uncertain, which is granted, election remains to him to whose benefit the grant was made to make the same certain. 14 Vin. Abr., p. 49." Armstrong v. Mudd (Ky.), 50 Am. D., 545.

It results from the views we have stated that the complainants' first assignment of error is sustained, and the Chancellor's decree will be modified accordingly. But, as we agree with the Chancellor that "complainant takes that portion of the home place in Rogersville willed him, subject to the contingency of Mrs. McDowell's being left a widow," the complainants' second assignment of error is overruled.

Through their third assignment of error the complainants say that the chancellor erred in holding that the testatrix died intestate as to all her personal property except that specifically named in the will. The particular paragraph of the Chancellor's decree at which this assignment is aimed is as follows:

"Upon a proper construction of the will of the late Nannie B. Clay, deceased, she died intestate as to all her personal estate save that specifically mentioned in the will, namely; 'all the furnishings in the house and out that belong to me' at the home place in Rogersville and all the stock and furnishings of the farms; the court being of opinion that the word 'balance' used in the second clause of the will of

the testatrix has reference to the farms and their stock and furnishings and not to her personal estate generally.

"It results, and is accordingly decreed, that as to all personal property owned by the testatrix, save that indicated, she died intestate, and the same upon her death passed to her surviving husband, H. B. Clay, Sr., jure mariti."

We concur in the ruling of the Chancellor embodied in that part of his decree just quoted.

It is insisted for complainants that the will of Mrs. Clay contains a general residuary bequest in favor of her four children, and that such residuary bequest is contained in that clause of the will which reads as follows: "Then I wish my farms with all their stock and furnishings to be divided into five equal parts, leaving one to my husband H. B. Clay to revert at his death to my children or their heirs, & the balance to be equally divided between my four children O. B. Bynum, Harry B. Clay, Jr., Elsie Clay McDowell & Mary C. Kenner each share to be held in trust for the benefit of their heirs & in no way subject to any debts they may owe now or in the future."

The contention of complainants is that the word "balance" in the clause just quoted was intended by the testatrix to include all of her property not otherwise specifically mentioned in the will. We do not think it is reasonably susceptible of such construction. The word "balance" is found in a sentence which manifestly refers exclusively to the "farms with all their stock & furnishings," and the scope of the word "balance" is, it seems to us, clearly limited by the context. "It is a familiar rule in the construction of terms to apply to them the meaning naturally attaching to them from their context. Noscitur a sociis is a rule of construction applicable to all written instruments and statutes. Where any particular word is obscure or of doubtful meaning, taken by itself, its obscurity or doubt may be removed by reference to associated words. And the meaning of a term may be enlarged or restrained by reference to the object of the whole clause in which it is used." 25 R. C. L., p. 995. See illustrations of this rule in Page on Wills (1st Ed.), sec. 478.

In this connection, complainants seek to invoke the "presumption against intestacy" (28 R. C. L., p. 227); but the common law presumption against intestacy (codified in Shannon's Code, sec. 3927) will not pass property not named in a will, which will contains only devices and bequests of specified property. Where there are no contextual words indicating an intention to include property not specifically mentioned. McDonald v. Ledford, 140 Tenn., 471, 205 S. W., 312. The presumption against intestacy is applied only when the words used in the will, by any "fair interpretation or allowable implication," will embrace the property otherwise undevised. Oldham v. York, 99 Tenn., 68, 77, 41 S. W., 333.

The specified devises and bequests in Mrs. Clay's will covered and included her entire estate as it existed at the date of the will; but the subsequent sale of timber by the testatrix, as before mentioned, operated as a conversion of that much of her real estate into personalty, and worked an ademption pro tanto of the devise of her farms. Ford v. Cottrell, 141 Tenn., 169, 180, 207 S. W., 734. And there being no words in the will which by "fair interpretation or allowable implication" would embrace the personalty into which the timber had been converted, such personalty passed, upon the death of Mrs. Clay, to her surviving husband jure mariti.

Our conclusion just stated renders it unnecessary for us to enter upon an extended discussion of the facts and law on which the defendants base a plea of former adjudication offered as a defense to complainant's suit insofar as he sought to recover one-fourth of the aforesaid timber notes, or their proceeds. The decree pleaded by the defendants herein as a former adjudication that Mrs. Clay died intestate as to all her personal estate, except that specifically mentioned in her will, was rendered by the chancery court of Hawkins county, on September 18, 1916, in a case styled J. Fred Johnson, Trustee, v. H. B. Clay & Wife. The bill in the case just mentioned was filed on June 2, 1916 (before Mrs. Clay's death but after she was paralyzed) by J. Fred Johnson, Trustee, seeking a decree for a specific performance of a contract theretofore executed by Captain Clay and Mrs. Clay by which they agreed to sell to J. Fred Johnson, Trustee, a certain tract of mountain land (a part of one of Mrs. Clay's farms before mentioned) at and for the price of $3911.25. Mrs. Clay's death occurred about eight days after the said bill was filed, and thereafter, on August 9, 1916, J. Fred Johnson, Trustee, filed a bill of revivor in said cause making the heirs at law and devisees of Mrs. Nannie B. Clay (including, of course, O. B. Bynum) parties defendant.

The aforesaid bill of revivor contained, among other averments, the following:

"Except as to stock on her farms, her farming implements and other tangible property at and in her house in Rogersville, the said Mrs. Nannie B. Clay died intestate as to her personal estate, and her personal estate, therefore, passed to her surviving husband, H. B. Clay, Sr.

"While a matter in which your complainant has no interest, it will, nevertheless, be the duty of the court in the event specific performance is granted, as is prayed for in the original bill, and in this bill of revivor, to adjudicate to whom the purchase money agreed to be paid by your complainant for said land, shall be paid. It is the opinion of your complainant and he so avers that the same will go to, and should be paid to, the defendant H. B. Clay, Sr., surviving

husband of the said Mrs. Nannie B. Clay, upon the theory that equity regards that as done which ought to be done. No administrator, with will annexed, has been appointed upon the estate of the said Mrs. Nannie B. Clay. She left no indebtedness which has not been paid.''

O. B. Bynum answered and denied (for reasons alleged in his answer) that the complainant J. Fred Johnson, Trustee, was entitled to a specific performance of the contract on which the suit was based, but stated that, if it should be held by the court that the contract was valid and enforcible, he denied that such proceeds ''should be treated as personal property,'' and further denied ''that the defendant H. B. Clay, as the husband of Nannie B. Clay, deceased, would be entitled to the proceeds thereof by right of the marital relation.''

The remaining adult defendants in said suit answered and admitted that the complainant J. Fred Johnson, Trustee, was entitled to a specific performance of the contract; that Mrs. Clay had died intestate as to the proceeds of said land contracted to be sold to J. Fred Johnson, Trustee, and that Captain Clay was entitled to the purchase price of said land jure mariti.

After the issues were made up in the manner above stated, and before any further steps were taken in the case, an agreement was reached whereby Captain Clay paid O. B. Bynum one-fourth of the purchase price of the land involved in the suit, and in consideration thereof O. B. Bynum withdrew his answer and announced (in open court) that he would make no further contest in the case. A decree was thereupon entered which contained, in its first paragraph, the following recitals and judgment pro confesso, viz:

''In this cause the defendant, O. B. Bynum appeared in open court, through R. C. Coleman his solicitor of record, and moved the court that he be permitted to withdraw from the file the answer filed by him in the case, announcing his intention to not further contest the relief sought by the complainant under his original bill and the bill of revivor, and the court permitted him to withdraw the said answer; and upon the said answer being withdrawn the complainant moved the court for a judgment pro confesso against the said Bynum and it appearing to the court that the said Bynum is duly before the court by the service of process upon him, requiring him to appear and make defense to the original bill and the bill of revivor filed in the cause, and that having withdrawn his said answer he has failed to appear and make defense within the time and as required by law, it is therefore ordered that judgment pro confesso be and the same is hereby taken and entered against said Bynum and the cause will proceed ex parte as to him.''

Then followed a decree (upon the theory of specific performance) divesting and vesting title to the land described in the pleadings, after which the court further decreed, among other things, as follows:

"The court holds that the defendant H. B. Clay, Sr., as surviving husband of the defendant Nannie B. Clay, is entitled to have and receive the purchase money due for the said land paid into court by the complainant, it appearing that the said Nannie B. Clay in her last will and testament, a copy of which is on file in the case, made no disposition of the same, and that as a result, under the law, her surviving husband takes the same upon the principle that equity treats that as done which ought to be done, and that upon the election of the complainant to buy the said property in the lifetime of the said Nannie B. Clay, the transaction should be treated as consummated as of that date, the complainant being thereafter the owner, equitably, of the real estate, and the defendant Nannie B. Clay of the purchase money agreed to be paid therefor."

We are of the opinion that the aforesaid decree in the case of J. Fred Johnson, Trustee, v. H. B. Clay & Wife, is not available, under defendants' plea of res adjudicata, as a bar to the suit of complainant O. B. Bynum for the recovery of a share of the aforesaid timber notes and money in bank. Our reasons for so holding may be briefly summarized as follows:

(1) The cause of action is not the same. 15 R. C. L., p. 962, par. 438. The former suit and the present suit are based upon wholly different claims or demands.

(2) O. B. Bynum and H. B. Clay, Sr., were not adversaries, but co-defendants, in the former suit. 15 R. C. L., p. 1013, par. 481; 21 A & E Anno. Cas., p. 1072. There were no cross-pleadings making an issue between them, and the decree rendered was in favor of J. Fred Johnson, Trustee, as complainant, and against all of the defendants, including both O. B. Bynum and H. B. Clay, Sr.

(3) The decree in the former case does not purport to make any adjudication concerning the timber notes and bank deposits, nor any adjudication that Mrs. Clay died intestate as to all of her personalty other than that specifically mentioned in the will, but simply adjudges that Mrs. Clay made no disposition, in her last will and testament, of the proceeds of the land which she had contracted to sell to J. Fred Johnson, Trustee.

(4) The decree in the former suit was based on a judgment pro confesso, and "a judgment by default only admits for the purpose of the action the legality of the demand or claim in suit; it does not make the allegations of the declaration or complaint evidence, in an action upon a different claim." Cromwell v. Sac County, 94 U. S., 351, 24 L. Ed., 195, 199.

But, notwithstanding our conclusion that the decree in the aforesaid case of J. Fred Johnson, Trustee, v. H. B. Clay & Wife is not a former adjudication available as a defense under the plea of res adjudicata in this case, we think, for the reasons hereinbefore stated,

that the Chancellor did not err in adjudging and decreeing that Mrs. Nannie B. Clay died intestate as to all her personal property save that specifically mentioned in her will, and that her personalty not thus specifically mentioned in the will passed to her surviving husband, H. B. Clay, Sr., jure mariti. The complainant's third assignment of error is therefore overruled.

The complainant's fourth assignment of error is that the court erred in refusing to allow attorneys' fees for complainant's solicitors for services rendered in the construction of the will, and in obtaining a partition of the home place between complainant O. B. Bynum and Mrs. McDowell.

Where there is a bona fide controversy or a reasonable doubt as to the meaning of a will, the executor or a testamentary trustee may maintain a suit in chancery to obtain a construction of the will and the direction of the court in the execution of his trust; and in such suit the court will ordinarily direct the payment of reasonable fees to the complainant's solicitors out of the estate involved. But such fees are paid out of the estate for the reason that a trustee is entitled to his proper and necessary expenses incurred in the execution of his trust, to be paid out of the trust fund, and attorney's fees are proper expenses whenever it is proper to employ an attorney in the management, care or protection of the trust estate. Burney v. Atkinson (Tenn. Chy. App.), 54 S. W. R., 998.

The complainant below did not occupy the status of a trustee. He was merely seeking to assert rights claimed by him under the will of his mother, and the construction of certain provisions of the will was necessary as an incident to the determination of complainant's right to the relief which he was seeking. The case presented a contest between the complainant and the defendants below respecting their relative rights in the estate left by Mrs. Clay, and a construction of Mrs. Clay's will was essential to a settlement of the issues raised by the pleadings. The chancery court had jurisdiction to adjudicate the questions presented on the record (Pritchard on Wills, sec. 382), but it does not follow that complainant is entitled to an allowance of solicitors' fees out of the estate of Mrs. Clay. The parties should pay their respective solicitors. Ensley v. Ensley, 105 Tenn., 107, 134, 58 S. W., 288.

Moreover, there is no representative of the estate of Mrs. Nannie B. Clay before the court against whom a decree could be rendered for the payment of fees out of that estate. The property which passed under the will of Mrs. Clay is not in the custody of the court in such way that the court could subject it to a decree for fees of complainants' solicitors.

It is further insisted, in support of complainants' fourth assignment of error, that fees should be allowed to complainant's solicitors

because their services resulted in the "partition" of the home place at Rogersville between complainant O. B. Bynum and defendant Mrs. McDowell. This is, in our opinion, an erroneous conception of the case, in that, it is not, in any sense, a "partition" case. A partition "is a separation between joint owners or tenants in common of their respective interests in land, and setting apart such interests, so that they may enjoy and possess the same in severalty." Meacham v. Meacham, 91 Tenn., 532, 535, 19 S. W., 757.

O. B. Bynum and Mrs. McDowell are not, and have never been, tenants in common, or joint owners, of any part of the "home place" of their mother at Rogersville, and the decree of the Chancellor did not purport to "partition" said parcel of land between them. The Chancellor's decree merely defines the boundaries of the respective parcels carved out of the home place which, in his opinion, O. B. Bynum and Mrs. McDowell took in severalty under the will of Mrs. Clay. The controversy between O. B. Bynum and Mrs. McDowell, with respect to the Rogersville property, was in the nature of a disputed boundary line, rather than a partition suit. The complainants' fourth assignment of error is overruled.

After the four assignments already disposed of had been filed, an "additional assignment of error" was (with the consent of defendants' solicitor), filed on behalf of complainants, through which assignment it is asserted that the second codicil to Mrs. Clay's will was intended as a substitute for and a revocation of the first codicil. If this view should.be adopted it would result that Mrs. McDowell would take no present interest in any part of the home place at Rogersville, and her only interest therein would be a contingent one, that is, if at any time in the future she should be "left a widow," she would share equally with O. B. Bynum in the Rogersville property.

As already stated in a preceding part of this opinion, we hold that the second codicil does not revoke the first codicil, but merely imposes a contingent limitation upon the estates in the Rogersville property devised to O. B. Bynum and Mrs. McDowell, respectively.

The complainants' "additional assignment of error" is overruled for the reason just stated, and for the further reason that the complainants are thereby attempting to assume a position wholly inconsistent with the averments of the original bill and the attitude of complainant O. B. Bynum in his pleadings and testimony throughout the proceedings in the chancery court, wherein he expressly conceded that Mrs. McDowell was entitled, under the first codicil, to "the large building lot," but he denied that the lot thus devised to Mrs. McDowell was as large as she claimed. Such was the attitude of complainants in their original assignments of error and brief filed in this court. A litigant who has taken a particular position deliberately in the course of litigation, without mistake induced by the opposite

party, must àct consistently with it. Stamper v. Venable, 117 Tenn., 557; Stearns Coal & Lumber Co. v. Jamestown Railroad Co., 141 Tenn., 203, 206; Heggie v. Hayes, 141 Tenn., 219, 227; Sartain v. Dixie Coal & Iron Co., 150 Tenn., 633, 651-653. The complainants' "additional assignment of error" is overruled. This disposes of all of the complainants' assignments of error.

Through their assignment of error and the briefs and argument of their counsel, the defendants Elsie Clay McDowell, Mary Clay Kenner and Mary Clay Jackson complain of that part of the decree of the Chancellor wherein he granted a recovery against them, and in favor of complainant O. B. Bynum, for $1675.62, and interest thereon from August 27, 1919—making a total recovery of $2186.87. The Chancellor's findings of fact and law upon which he based the recovery thus challenged by defendants are embodied in the second paragraph of his decree, which paragraph is in words and figures as follows:

"The court finds and decrees that there were upon the farms at the time of the death of the testatrix 439 grazing cattle, which according to the usual course of the conduct of the farms were to be marketed in the fall after her death; that these cattle were the property of the testatrix and were so treated by the family, including H. B. Clay, surviving husband, after the death of the testatrix, and that H. B. Clay, surviving husband, under the will took only a life estate in a one-fifth interest in these cattle and their proceeds. The court further finds and decrees that these cattle were sold in the fall after the death of the testatrix for the net sum of $37,024.54; that the fair value of these cattle at the time of the death of Mrs. Clay was the sum of $33,512.50, and that the net value of the fund coming to Captain Clay's hands therefrom, as representing his one-fifth interest therein, in which he took a life estate, was the sum of $6,702.50, and that upon the death of Capt. H. B. Clay the complainant Bynum was entitled to be paid as remainderman under the will, from the proceeds of Capt. Clay's estate, one-fourth this sum, or the sum of $1,675.62. And the court is further of opinion and so decrees that the complainant is entitled to recover that sum from the defendants in this action, with interest thereon from August 27, 1919, or a period of six months after the death of Capt. Clay.

The court finds and so decrees that upon the death of Capt. Clay the defendants, his children and heirs at law, undertook to and did, through the defendant Mary Clay Kenner, their designated agent, administer the great bulk of said estate without the due appointment of an administrator, and that while thus proceeding something like $28,000 of an aggregate estate of $32,000 was so administered and disbursed among the heirs at law; that Mary Clay Kenner was eventually and on December 18, 1919, appointed administrator of the es-

tate in order that certain war stamps owned by the intestate might be converted into money.

And upon these facts the court holds and decrees that the complainant is entitled to recover from all the defendants that part of the proceeds of said cattle due him as hereinbefore decreed.

It is accordingly, therefore, further decreed that the complainant O. B. Bynum have and recover of the defendants Elsie Clay McDowell, Mary Clay Kenner and Mary Clay Jackson the sum of $2,186.87 (as between them to be paid one-third by each but a joint decree in favor of the complainants as against all), representing the value of his remainder estate in the said 439 grazing cattle, with interest from six months after the death of Captain Clay, which upon the death of Capt. H. B. Clay should have been turned over and delivered to him by those parties taking charge of and undertaking to administer his estate."

A number of propositions are advanced by the learned and able counsel for defendants in support of their assignment of error, supra. We will consider these propositions in the order which to us seems most convenient, without attempting to follow the order of their statement in the briefs of counsel.

It is said that (1) the 439 grazing steers were the property of Captain Clay and therefore did not pass under the will of Mrs. Clay, and (2) that, if it should be held that said steers belonged to Mrs. Clay, she did not intend to include them in the bequest of the "stock and furnishings" of her farms, but died intestate as to the 439 grazing steers, and they passed to Captain Clay jure mariti.

It is a sufficient answer to both of the contentions just stated to say that Captain Clay, through whom the appealing defendants are claiming, conceded that the 439 grazing steers passed under the will of his wife, and he elected to accept the benefits conferred upon him by the will. He stated under oath in a judicial proceeding on August 28, 1916,—less than three months after Mrs. Clay's death and before the steers were sold—that O. B. Bynum was the owner of an interest in said steers under Mrs. Clay's will. (See 150 Tenn., p. 647). Thereafter Captain Clay sold the 439 steers and distributed the proceeds in accordance with Mrs. Clay's bequest of the "stock and furnishings" of her farms.

It is argued for defendants that if the grazing steers were in fact the property of Captain Clay, but Mrs. Clay attempted to dispose of them in her will, Captain Clay was required to elect only as to the four-fifths of said steers going to the children, and not as to the one-fifth which the will purported to give to him for his lifetime. This argument overlooks the fact that Mrs. Clay, in her will, devised to Captain Clay an undivided one-fifth interest (for his lifetime) in her valuable farms, with the "stock and furnishings" thereon of con-

siderable value (exclusive of the 439 grazing steers), although she had the legal right to deny him any and all participation in her estate Day v. Burgess, 139 Tenn., 559, 571, 202 S. W., 911.

Captain Clay elected to accept the life estate which Mrs. Clay devised to him out of property admittedly belonging to her, and, if he owned the grazing steers (which we do not hold), he was required to elect, not only as to the four-fifths going to the children, but as to the remainder estate in the one-fifth bequeathed to him for his lifetime,—which remainder was bequeathed to the four children of Mrs. Clay. "One entitled to a benefit under an instrument, whether it be a will or any contract, if he claims the benefits of such instrument, he must abandon every right the assertion whereof would defeat even partially the provisions of the instrument. A party cannot occupy inconsistent positions, but will be confined to his election." O'Bryan Bros. v. Glenn Bros., 91 Tenn., 106, 110, 17 S. W., 1030.

Another argument made on behalf of defendants is that the word "revert" (in the phrase "to revert at his death to my children or their heirs") refers exclusively to the real estate devised. This argument is based on the proposition that "the word 'revert' has a significant technical meaning, and refers to real estate, until a clear intention appears otherwise."

Mrs. Clay wrote her own will, and it bears inherent evidence that she was not familiar with legal nomenclature. "Wills are, of all classes of legal instruments, least to be governed in their construction by their technical terms, and this has been held to be especially the case in this country, because wills here are most frequently drawn by persons unacquainted with legal phraseology, and ignorant of the meaning which the law attaches to the words they use. Not infrequently the testator is like the writer described by Byron as having just enough of learning to misquote. Especially where a will bears earmarks of having been drawn by a layman, and not by a lawyer, the court, in the endeavor to arrive at the intent of the testator, will not view the language technically but liberally and with reference to its popular meaning." 28 R. C. L., p. 224, par. 185.

"Revert" means to return or turn back, and its legal or technical signification is for property to return or go back to a person who formerly owned it, but who parted with the possession or title to it by creating an estate in another. Pearce v. Lott, 101 Ga., 395. And it may apply to personal as well as real property. Ingraham v. Ingraham, 169 Ill., 432; McDowell v. Stiger, 58 N. J. Eq., 125; Beatty v. Trustee, etc., 39 N. J. Eq., 452, 463; In re Bennett's Estate, 134 Calif., 320.

Speaking accurately, it would be impossible for an estate to "revert" to persons who had never had any interest in it; but the word "revert," when used in wills, has been frequently construed to mean

"go to." Johnson v. Askey, 190 Ill., 58; Beatty v. Trustees, etc., supra; In re Bennett's Estate, supra; Miller v. Gilbert, 22 N. Y. Supp., 355, 357; Snell's Executors v. Snell, 38 N. J. Eq., 119, 124.

It is obvious that, in her will, Mrs. Clay used the word "revert" as meaning go; that is to say, the phrase in question may well be read, "to go at his death to my children or their heirs." And it is equally obvious that the testatrix intended the remainder thus created to apply to the "stock and furnishings" as well as the "farms." The "farms with all their stock and furnishings" are to be "divided into five equal parts," and the testatrix leaves one of the five equal parts to her husband, H. B. Clay, but with the direction that the share thus left to her husband shall go at his death to her children or their heirs.

It is not stated in the will, in haec verba, that the one-fifth part of the "farms with all their stock and furnishings" is devised and bequeathed to H. B. Clay for the term of his natural life only, but the purpose of the testatrix to limit the interest of her husband to a life estate is clearly manifested by the provision that such one-fifth equal part shall revert at the death of H. B. Clay to the children of the testatrix or their heirs. It is said in Page on Wills (1st Ed.), sec. 597, that "a life estate in personal property may also be created by a gift of personal property which, (whether) expressly stated to be for life or not, gives the principal, on the death of the first taker, to other beneficiaries named. In order to give effect to every part of such bequest, the interest of the first taker is construed as a life interest only."

"It is now well settled that interests for life and in expectancy, by analogy to estates, can be created in personal as well as in real property. Future interests or quasi-remainders, operating in analogy to remainders or executory devises, may be created in money and other personalty, and they may be created by either deed or will, and without the intervention of a trustee." Landers Investment Co. v. Brown, 30 A. L. R., 908, 911. See, also, 11 R. C. L., pp. 473-474, par. 11; Note, 67 Am. D., 453; Page on Wills (1st Ed.), sec. 596.

It is further insisted for defendants that the 439 grazing steers should be classified as property which is "consumable in its nature," and that "no life estate arises in this kind of property." We do not think that steers bought to be grazed and sold in the same season belong to the class of articles "consumable in the use," such, for example, as wine, corn and hay. Henderson v. Vaulx, 10 Yerg., 29, 34; Overton v. Nashville Trust Co., 110 Tenn., 50, 55, 72 S. W., 108.

It is further argued for defendants that it must have been contemplated that the grazing steers would be sold, as it was impossible to maintain them permanently (and it had been the long established custom on the Clay farms to buy, graze and sell several hundred

steers annually), and that, as the legatee (Captain Clay) thus had power (implied from the nature of the property) to sell the steers, he took an absolute title to the one-fifth equal part of same bequeathed to him.

It is an established rule that an unlimited power of disposition in the first taker of a bequest of personalty will destroy a remainder limited thereon; but "the unlimited power of disposition must be given by the will and cannot arise as a mere incident to the estate devised." Eaton v. Nashville Trust Co., 145 Tenn., 575, 578, 238 S. W., 865. It is seen from an inspection of Mrs. Clay's will that, in terms, it neither confers upon Captain Clay the power to dispose of personalty bequeathed to him nor directs that he shall enjoy the same in specie. We think he had a lawful right to sell the steers thus bequeathed to him for life, but this power of sale arose out of the nature of the property and "as a mere incident to the estate devised," and did not defeat the limitation over to the children of the testatrix. Fraker v. Fraker, 6 Baxt., 340, 353; Vancil v. Evans, 4 Cold., 340, 344-345; Woods v. Sullivan, 1 Swan, 506, 510.

"Where the property is given for life, and no trust is created, the beneficiary has a right to the possession of the corpus of the property without the intervention of a trustee." Page on Wills (1st Ed.), sec. 598.

And where chattels are given generally (as "stock and furnishings," for example), and not in specie, it is the duty of the life tenant to convert such articles into money, and save the principal for the remainderman. Note, 67 Am. D., 453, citing cases.

Again, it insisted for defendants that "complainant's claim was maintainable solely against Captain Clay's administrator, and the action was barred by the statute of limitations," and that, "this cannot be evaded by ignoring the administrator, and giving judgment against the heirs at law."

It was alleged in the original bill that H. B. Clay, Sr., had died intestate on February 27, 1919, leaving a personal estate of approximately $35,000—the major part of which had been acquired by the intestate from the estate of his deceased wife, Mrs. Nannie B. Clay, and that no one had been appointed to administer Captain Clay's estate, but that his two daughters and his granddaughter (Mrs. Kenner, Mrs. McDowell and Mrs. Jackson), had taken possession of the property which was in the hands of Captain Clay at the time of his death and had divided it among themselves. The complainant prayed for a decree against said three defendants and against W. D. Kenner (who, it was charged in the bill, had also intermeddled with the property left by Captain Clay) for "the amounts justly due him (O. B. Bynum) upon the matters above set out" (which included

the matter of his one-fourth interest in Captain Clay's one-fifth equal part of the aforesaid 439 grazing steers).

During the pendency of the case in the chancery court, complainant O. B. Bynum discovered, for the first time, that defendant Mrs. Mary Clay Kenner had been appointed and had qualified (on December 18, 1919) as administratrix of Captain Clay's estate, and complainant Bynum thereupon, by leave of the court, amended his bill by adding to section 2 thereof the following, viz:

"On or about February 27, 1919, H. B. Clay, Sr., died intestate. In the month of December following the defendant Mary Clay Kenner was appointed administrator of his estate by the county court of Hawkins county, and gave bond as such in the penalty of $2000, with her husband the defendant, W. D. Kenner, as surety. The said Mary Clay Kenner has never filed, as required by statute, an inventory of the estate of her deceased father, nor has she made or attempt to make settlement thereof, as the law requires, and it is the information and belief of your complainant, and he avers such to be the fact, that the bulk of the estate has been administered upon and distributed among the children of Capt. Clay, acting as administrators de son tort, prior to the appointment of Mrs. Kenner as administrator, and that such appointment was necessitated and procured to be made for some technical reason not at the present known to your complainant. Your complainant shows that while the records of the court show that Mrs. Kenner was appointed administrator on or about the date mentioned, he had no knowledge of the fact that she had been so appointed until after the filing of the original bill in this case, and upon the coming in of the answer of the defendants."

And he amended section 3 of the original bill by inserting therein the following:

"It is complainant's information, and he avers as a fact, that while the defendant Mary Clay Kenner on or about December ———, 1919, was appointed administrator of the estate of her deceased father by the county court of Hawkins county, and gave bond as such, as hereinbefore charged, that she has never filed an inventory of such estate, or made settlement thereof, and that such appointment was purely formal and for some technical reason unknown to your complainant. And your complainant avers further that prior to said appointment, the estate of Capt. Clay had been taken charge of by defendants, his children, and practically administered upon and distributed among them, they, or some of them, acting as administrators de son tort; the defendant Mary Clay Jackson taking and acting in the right of her deceased father, H. B. Clay, Sr."

The record supports the averments of the amendments to the bill just quoted. It appears that, soon after the death of Captain Clay, the defendants Mrs. Kenner, Mrs. McDowell and Mrs. Jackson entered

into a written agreement to the effect that Mrs. Kenner, acting for herself and as agent for the other two contracting parties, should take charge of Captain Clay's property and, after paying the decedent's debts, distribute the said estate among the three persons named; and that, pursuant to said agreement, Mrs. Kenner had collected more than $32,000 and, after paying Captain Clay's debts, had divided approximately $29,000 equally between herself and Mrs. McDowell and Mrs. Jackson,—each taking one-third. Of this sum, more than $21,000 was divided among the three defendants named prior to the time Mrs. Kenner qualified as administratrix.

It also appears that after taking possession of said property as the estate of Captain Clay, the defendant Mrs. Kenner qualified as administratrix merely for the purpose of collecting some War Savings Stamps. Mrs. Kenner gave a bond as administratrix for only $2,000, filed no inventory, made no advertisement for creditors of the estate, and made no settlement of her administration in the county court.

When the complainant amended his original bill as aforesaid he did not amend the prayer of same so as to seek a decree against the administratrix of Captain Clay's estate.

The aforesaid amendments to the original bill were made on July 15, 1922—more than two years and six months after Mrs. Kenner's appointment as administratrix, and Mrs. Kenner filed an answer to the bill as amended in which she averred that her intestate had been dead more than three years and six months before the filing of complainant's bill against her as administratrix, and she pleaded and relied upon the statutes of limitation carried into Shannon's Code as sections 4481 and 4012 as a bar to complainant's suit.

The Code sections thus pleaded by defendants are as follows:

4012. "The creditors of deceased persons, if they reside within this state, shall, within two years, and, if without, shall within three years, from the qualification of the executor or administrator, exhibit to them their accounts, debts, and claims, and make demand, and bring suit for the recovery thereof, or be forever barred in law or equity."

4481. "Actions against the personal representatives of a deceased person shall be commenced by a resident of the state within two years, and by a nonresident within three years, after the qualification of the personal representative, if the cause of action accrued in the lifetime of the deceased, or, otherwise, from the time the cause of action accrued."

The two sections above quoted are to be construed in connection with section 4451, Shannon's Code, which provides that: "The time between the death of a person and the grant of letters testamentary or of administration on his estate, not exceeding six months, and the

six months within which a personal representative is exempt from suit, is not to be taken as a part of the time limited for commencing actions, which lie against the personal representative."

In our opinion, these statutes do not afford a bar to complainant's suit against Mrs. Kenner, Mrs. McDowell and Mrs. Jackson.

The limitation provided by section 4012 runs against no one but "the creditors of deceased persons," and this embraces only those persons who have demands originating in contract or agreements with the deceased. (See cases cited in Note 2 under section 4012, Shannon's Annotated Code.)

This suit is based on rights derived through Mrs. Clay's will, and not from contract or agreement with Captain Clay.

Section 4481 relates to "actions against the personal representatives of a deceased person." No judgment or decree was sought against Mrs. Kenner as the administratrix of the estate of H. B. Clay, Sr., either in the bill as originally filed or as amended; and the decree or judgment of which the defendants are complaining is not against Mrs. Kenner as administratrix, but against Mrs. Kenner, Mrs. McDowell and Mrs. Jackson personally.

Defendants argument that "complainant's claim was maintainable solely against Captain Clay's administrator" is fallacious for the reason that this is not a suit to reach assets of the estate of Captain Clay. (Mask v. Miller, 7 Baxt., 527, 528-529). The owner of a life estate in personal property is regarded as a trustee for the remainder-man. 11 R. C. L., p. 475, par. 14; Williams v. Conrad, 11 Humph., 411, 416; Griggs v. Dodge (Conn.), 2 Am. D., 82, 86.

And "after the termination of a particular estate in personal property, an account will lie to recover the property limited over, and it has been held that after the death of the legatee for life of personal estate, the remainderman may recover the property limited over, in an action on the case; and that in such action it is sufficient to describe the property as consisting of money and other articles of personal estate of the value of a specified sum." 11 R. C. L., p. 476, par. 15; Griggs v. Dodge, supra, and note page 86.

Where a trustee mingles money belonging to the trust estate with his own, on his death the beneficiary is not, if the estate is solvent, relegated to the position of a creditor, but may sue to impress a trust on the money of the trust estate, the heirs of the trustee being deemed to stand in his shoes; and where the rights of creditors or bona fide purchasers have not intervened, the beneficiary may, at his option, follow the trust property, rather than hold the trustee as his debtor. Noble v. Noble (Calif.), 43 A. L. R., 1235, and note page 1240.

Defendants say that "the judgment was a joint judgment against the heirs at law, the action is not a tort action and if entitled to a

judgment against the heirs, then only against each individual heir for his pro rata.''

The fact that Mrs. Kenner, Mrs. McDowell and Mrs. Jackson wrongfully appropriated to themselves the personalty in the possession of their father at the time of his death, pursuant to a previous agreement to do so, renders each of them liable for the acts of the others in the premises, and the joint and several judgment rendered by the Chancellor was proper.

Finally, defendants say that ''complainant was entitled in no event to interest from six months after Captain Clay's death. He was guilty of laches barring a recovery for interest.''

When defendants entered into the contract (which they afterwards carried out) to appropriate to themselves the property involved in this suit, to the exclusion of complainant O. B. Bynum, they knew that Bynum was making a claim to a part of the proceeds of the 439 grazing steers which he has asserted by his bill in this case, but they wrongfully withheld same from him, and we are not aware of any sound reason for relieving them of the payment of interest.

As we have seen, the Chancellor decreed that interest should run on the recovery in favor of O. B. Bynum for the value of his remainder interest in the 439 grazing cattle ''from six months after the death of Captain Clay.'' The theory upon which the Chancellor reached his conclusion that interest should run from the date above named is not disclosed by the record. We think the defendants are liable to complainant for interest from the time they took into their possession the estate left by Captain Clay (which included the aforesaid $1675.62 belonging to complainant). In less than six months after Captain Clay's death, a sum considerably in excess of the amount last mentioned had been received by each of the three defendants against whom the judgment was rendered. We will not disturb the Chancellor's decree with respect to interest, and the complainants will be entitled to a decree against Mrs. Kenner, Mrs. McDowell and Mrs. Jackson for $1675.62, with interest thereon from August 27, 1919, to the date of the decree of this court.

It results that all of the assignments of error are overruled except the first assignment of the complainants, which is sustained. The 4th paragraph of the final decree of the chancery court will be modified so as to adjudge and decree that Mrs. Elsie Clay McDowell takes, under the first codicil of her mother's will, fifteen acres of the home place at Rogersville, to be laid off in the manner, and held by her subject to the contingency, heretofore stated in this opinion. In other respects the Chancellor's decree is affirmed. The costs of the appeal and the writ of error will be equally divided—one-half of same to be adjudged against complainants Mrs. Mary Harris Bynum, individually and as guardian of her infant son John Gray Bynum, and

R. C. Coleman, administrator of the estate of O. B. Bynum, deceased, and the sureties on their bond for the writ of error, and the remaining one-half of said costs to be adjudged against the appealing defendants Mrs. Mary Clay Kenner, Mrs. Elsie Clay McDowell and Mrs. Mary Clay Jackson, and the surety on their appeal bond.

The cause will be remanded to the chancery court of Hawkins county for the execution of the decree under the orders of that court. Snodgrass and Thompson, JJ., concur.

## MEMO. FOR DECREE.

In this case a written opinion was handed down and filed on a former day of the present term, in and by which the court directed, among other things, an affirmance of the recovery granted by the chancery court in favor of O. B. Bynum and against Mrs. Elsie Clay McDowell, Mrs. Mary Clay Kenner and Mrs. Mary Clay Jackson for $1675.62, as the value of the remainder interest of O. B. Bynum in the 439 grazing cattle mentioned in the pleadings and decree, with interest thereon from and after August 27, 1919.

In the course of the preparation of a decree to be entered in this court a controversy has arisen between counsel as to whether the administrator of O. B. Bynum or the infant son (and sole heir) of O. B. Bynum is entitled to the recovery above mentioned.

Divergent views of the question just stated have arisen out of differing interpretations of that clause of Mrs. Clay's will which reads as follows: "I wish my farms with all their stock and furnishings to be divided into five equal parts, leaving one to my husband H. B. Clay to revert at his death to my children or their heirs, & the balance to be equally divided between my four children O. B. Bynum, Harry B. Clay, Jr., Elsie Clay McDowell & Mary C. Kenner each share to be held in trust for the benefit of their heirs and in no way subject to any debts they may owe now or in the future."

The question is, whether O. B. Bynum took the aforesaid recovery in his own right and for his own benefit, or as trustee for his "heirs."

We think that upon the death of Captain Clay the one-fifth part of the farms, with all their stock and furnishings, vested in the three children of testatrix then living (O. B. Bynum, Mrs. Elsie Clay McDowell and Mrs. Mary Clay Kenner) and the grand-child of testatrix, Mrs. Mary Clay Jackson, as the "heir" of her father H. B. Clay, Jr. The said three children and grand-child of the testatrix took said remainder in their own right and not as trustees.

As we interpret the paragraph of Mrs. Clay's will hereinbefore quoted, the words, "each share to be held in trust for the benefit of their heirs," do not refer to that one of the "five equal parts" of the "farms with all their stock and furnishings" which was devised and bequeathed to Captain Clay for life, with remainder to the children

of the testatrix or their heirs, but refer to "the balance," that is, the remaining four "equal parts" which were devised and bequeathed to the four named children of the testatrix.

It is therefore unnecessary, for present purposes, to ascertain the legal effect of the words "each share to be held in trust etc.," as no question arises on this appeal with respect to whether the four children of testatrix took the four shares thus devised and bequeathed to them in their own right or "in trust for the benefit of their heirs."

The decree will be entered, as prepared by complainant's solicitors (and which accompanies this memo.), granting a recovery to R. C. Coleman, as administrator of O. B. Bynum, deceased, against Mrs. Mary Clay Kenner, Mrs. Elsie Clay McDowell and Mrs. Mary Clay Jackson, and the surety on their appeal bond, for the principal sum of $1675.62, representing the recovery granted by the chancery court in favor of O. B. Bynum for his remainder interest in the 439 grazing cattle, together with interest thereon from August 27, 1919, to the date of the entry of the decree of this court, with the provision that unless said recovery is satisfied within thirty days from the date of the decree, execution may issue.