SARAH EASLEY et al. v. NELLIE JAMES et al.

Middle Section.    June 1, 1929.

Petition for Certiorari denied by Supreme Court, January 18, 1930.

Claude B. Stephenson, of Centerville, and Howard E. Brown, of Dickson, for appellants.

Connor Bates, of Centerville, for appellees.

DeWITT, J.    The true location of the boundary line between two tracts of land devised by J. W. McDonough to his daughters Mrs. Sarah Easley and Mrs. Nellie James, is the sole subject of controversy in this cause. The will of Mr. McDonough (who died in 1920) was executed in June, 1915. He owned a tract of about 145 acres, which he devised in separate parcels to his son, John V. McDonough, his said two daughters and the two children of

a deceased son. These parcels are described by metes and bounds in the will.

The devise to Mrs. Nellie James is as follows:

"I will and bequeath to my daughter Nellie the following parcel of land to-wit: Beginning on a red oak near the head of a spring, said red oak being the second turn of my east boundary line, from my beginning corner, runs south 41 degrees east 17 chains to a stake or stone; thence south 80 degrees west to my west boundary line; thence north to my original corner; thence with my north boundary line back to the beginning corner, containing (55) fifty-five acres more or less."

This is the northernmost portion .of the larger tract.

The devise to Mrs. Sarah Easley is as follows:

"I also will and bequeath to my daughter Sarah the following parcel of land to-wit: Beginning in my east boundary line at (57-24) fifty-seven poles and 24 links from my original beginning corner; thence north 41 degrees W. (35-11) thirty-five .poles and eleven links to the Southeast corner of the parcel willed to my daughter. Nellie; thence south 80 degrees west to my west boundary line; thence south to the Northwest corner of the parcel willed to two of the heirs of my son Thomas; thence north 85 degrees east to the beginning, by estimation (28A.) twenty-eight acres."

This land devised to Mrs. Easley lies immediately south of and adjoining the land devised to Mrs. James. The call, "thence south 80 degrees west to my west boundary line," is the subject of dispute. It is insisted by complainants Mrs. Sarah Easley and J. V. McDonough that the intention of the testator was that this line should run in the.direction south 82½ degrees west by reason of the variation of the magnetic needle, since the land was originally surveyed nearly one hundred years ago; and that this is ascertainable as his intention from the will construed as a whole in the light of the surrounding facts and circumstances.

The testator devised to his two grandchildren a parcel of the land lying immediately south of that devised to Mrs. Easley, describing it by metes and bounds and as containing 33 acres.

He devised to J. V. McDonough the parcel of land lying south of and adjoining that devised to his said grandchildren, describing it by metes and bounds and as containing 28 acres.

In his will the testator set a value of $1100 on each of the tracts devised to Mrs. Easley, his two grandchildren and J. V. McDonough, but did not designate any value as to the tract of 55 acres devised to Mrs. James.

The defendants Mrs. James and her husband pleaded an estoppel upon complainants by reason of the following facts which are undisputed.

(1) The complainants, at the December term 1922 of the circuit court after a jury had sustained the will upon an issue of devisavit vel non, agreed to the entry of an order by consent dismissing their contest and sustaining the verdict of the jury. The effect of the order, was that the devises shall stand, "and the lands given to Nellie McDonough James in said will shall under no circumstances be sold for the payment of any of the debts owing by said estate, any of the costs of this cause, or equalization of the various devisees under said will."

(2) By a deed dated January 8, 1923 Mrs. Easley sold to J. V. McDonough, with covenants of warranty, the said tract of 29 acres devised to her, the line here in dispute being described, "runs thence south 80 degrees, west 218 poles, running with said Nellie McDonough James tract, to the west boundary line of the original tract." On January 14, 1924, J. V. McDonough executed a mortgage to J. S. Beasley of this, among other tracts, describing the line in dispute in the aforesaid language contained in the deed of Mrs. Easley to him. On March 21, 1924, he executed a deed of trust to William McDonough, trustee to this and other tracts, describing this disputed line in the same identical language.

The defendants denied the averments in the bill that it was the intention of the testator that said line should run according to the variations of the north boundary line, which was originally described as "south, 70 degrees west." Their insistence is that there is no ambiguity in the will; that consideration of parol evidence that the intention was that the line should run other than "south, 80 degrees west" would violate the rule that parol evidence may not be heard to supply, but only to apply, a description.

The Chancellor dismissed the bill, holding "that said disputed line begins in the east boundary line of the original tract at the southeast corner of the 55 acre tract devised to defendant Nellie James by the will of her father, J. W. McDonough, and runs south, 80 degrees west to the west boundary line of said original tract."

The necessary elements of estoppel do not exist in the facts relied on as aforesaid, by the defendants.

The consent that the devises in the will should stand did not foreclose any inquiry into the intentions of the testator if from the contents of the will a question arises which necessitates a consideration of the surrounding facts and circumstances. The rule is abundantly settled, as stated in 21 C. J., 1135, and approved

in Rogers v. Colville, 145 Tenn., 650, 238 S. W., 80, as follows: "In order to create an estoppel the party pleading it must have been misled to his injury; that is, he must have suffered a loss of a substantial character, or have been induced to alter his position for the worse in some material respect. As otherwise expressed, where no available right is parted with and no injury suffered, there can be no estoppel in pais. . . . In the absence of injury, it is, of course, immaterial that the other elements of estoppel are present." This rule is directly applicable to the question of establishment of a boundary by estoppel. 9 C. J., 239.

There is no evidence that the instruments executed by Mrs. Easley and J. V. McDonough have misled the defendants to their injury, or induced them to alter their position for the worse in any respect; nor that they understood, when they executed the instruments, that "south, 80 degrees west" might not be the true course of the line in dispute. Now we come without hindrance to the real question of the intention of the testator as to the boundary between the two parcels of his land. The cardinal purpose is to ascertain this intention, and it is to be gathered from the scope and tenor of the whole of the will, and not from detached or isolated parts of it. Adkisson v. Adkisson, 4 Hig. (Tenn. C. C. A.), 453; Hoggatt v. Clopton, 142 Tenn., 184, 217 S. W., 657; Mears v. Wharton, 5 Hig., 329; 12 Tenn. Encycl. Dig. 649 and cases cited. The object is to further the wishes of the testator, to construe the will so that it will accomplish his real purposes, and these purposes must be found within the instrument. Hadley v. Hadley, 100 Tenn., 445, 45 S. W., 342; Fox v. Fox, 102 Tenn., 77, 50 S. W., 765.

But this rule does not forbid a reference to the facts or conditions under which the will was made. Guided by the light thus thrown on the testamentary scheme, the judicial expositor may find himself justified in departing from the strict construction of the testator's language. Sizer's Pritchard Law of Wills, sec. 409; Gannaway v. Tarpley, 1 Coldw., 572; Dixon v. Cooper, 88 Tenn., 177, 12 S. W., 445; East v. Burns, 104 Tenn., 169, 56 S. W., 830; Malone v. Malone, 8 Hig., 526; Bynum v. McDowell, 3 Tenn. App., 340. While the testator described each parcel of the land by metes and bounds, he also specified the number of acres in each tract devised; and by placing a value of $1100 on each of three of the tracts he showed an intention to equalize these devises. The land devised to Mrs. James is described as containing 55 acres; that to J. V. McDonough 28 acres; that to his grandchildren, 33 acres; that to Mrs. Easley, 29 acres. The number of acres named is sometimes the matter of description which locates and identifies the land. Bynum v. McDowell, supra. The intent to equal-

ize in value three of the tracts must also be taken into consideration.

The proof shows that the calls for the outside boundaries of the land were taken from a survey made nearly one hundred years ago; and that the magnetic pole has shifted so that some of these courses of lines, which are undisputed, are inaccurate as of the present time. It shows that there is a variation of 2½ or 3 degrees. One of the northern lines, originally given as "south 70 degrees west," is now south 72½ degrees west.

In order to understand the situation it is necessary to quote the description of the southernmost parcel, that devised to J. V. McDonough, containing 28 acres, more or less:

"Beginning at my original beginning corner on the west bank of Piney River; thence north 15 degrees east 23 poles and 10 links to a stake or stone; thence south 89 degrees west to my west boundary line; thence south to my original southwest corner to a chestnut; thence east to the beginning."

This southern boundary line, "thence east to the beginning," is an undisputed line. It is the old outside line. The southwest corner is described as being at a chestnut. The line of division between this parcel and the one next north of it is described as "south 89 degrees west to my west boundary line." The proof shows that if this line is run literally according to that call it will cross the south boundary line before it reaches the corner at the chestnut and it will leave to J. V. McDonough only 13.3 acres instead of 28 acres; that in order to enclose 28 acres the line must be run north 88½ degrees west, or rather south 91.5 degrees west. Running the line south 89 degrees west would leave the chestnut to the north and the line would never reach the west boundary of the tract at all. Now it also appears that if the other calls given in the will are literally followed, and especially the line between the Easley and James tracts, as south 80 degrees west, it would give to Mrs. James 65.45 acres instead of 55 acres as specified in the will. It appears that in the year 1912 the testator caused a survey of these lands to be made by I. A. Hunter; that he instructed Hunter to begin at a walnut tree in the northeastern boundary line and run a line westwardly to his western boundary line by a course which should be south 10 degrees more westwardly than the northern boundary line, which was originally described as, south 70 degrees west. Following this original call that line would be south 80 degrees west. There is also some proof that he instructed the surveyor to observe the variations of the compass upon the northern line in determining the courses of this new line. It also appears that this new line ran immediately south of a poplar tree some distance west of the walnut; that the

walnut is marked as a corner tree and the poplar is marked as a boundary tree. It further appears that the testator afterward decided to run this line 21½ feet north of the line thus run, and parallel with it, beginning at a stone which' is the undisputed southeast corner of the Nellie James tract. This, of course, is the line in dispute. While the line of the walnut and poplar is described as south 80 degrees west, it is in fact south 82½ degrees west as shown by a later survey made by Wilson Pell. From all this it must be inferred that it was the intention of the testator to devise to Mrs. Nellie James the tract of 55 acres lying north of the line which is 21½ feet north of and parallel with the walnut-poplar line. That was a marked line and resort may be had to it to determine the line as intended by the testator. The safest way to ascertain boundaries is to compare the grants with the marks and natural objects on the ground. Funa v. Manning, 11 Humph., 313; Disney v. Mining & Manufacturing Co., 11 Lea, 611. The Hunter survey was made to enable the testator to divide his land so as to devise it in parcels to his children and grandchildren. We may follow the rule that the proper method for ascertaining the boundaries of a grant is to find if possible, the lines which the surveyor surveyed on the ground. McNairy v. Hightower, 2 Tenn., 302.

In describing certain of the outside boundary lines of the original tract as boundaries of the constituent parcels, the testator used the ancient calls for courses; but the variation of 2½ degrees in the magnetic needle, as shown, demonstrates that these original calls cannot be adhered to so as to include all these lands within the outside lines, which lines are undisputed. This conflicts with the manifest intention of the testator.

Thus it is clear that in order to effect the intention of the testator, as disclosed in his will, to divide his lands according to acreages and values, it is necessary to treat the line in dispute as running south 82½ degrees west. This will consummate the scheme which he had in mind and harmonize the interests of the devisees or their assigns. It results from these conclusions that the decree of the Chancellor must be reversed and it will be so ordered. A decree will be entered in this court that the south boundary line of the tract devised to Mrs. Nellie James begins at the stake or stone in the east boundary line of the original tract and runs south 82½ degrees west to the west boundary line of said original tract. The costs of the cause, including the costs of this appeal will be adjudged against the defendants.

Faw, P. J., and Crownover, J., concur.