FRANK OWEN, et al. v. W. C. OWEN.

Middle Section.   July 14, 1928.

Petition for Certiorari denied by Supreme Court, December 22, 1928.

Pardue & Marable, of Ashland City, and Albert Williams and S. L. Felts, of Nashville, for appellee.

H. B. Stout, of Clarksville, and P. H. Duke, of Ashland City, for appellant.

OWEN, J. The question involved in this appeal is the construction of the will of W. G. Owen, a late citizen of Ashland City, Cheatham county, Tennessee. Said will was executed on the 17th day of June, 1922, two days before the death of the testator. On June the 18th the testator made a codicil to said will, the codicil simply mentioned the fact that by error the children of the testator's brother, T. M. Owen, were left out of the bequest stated in item 2 of said will. The defendant, W. C. Owen, a nephew of the testator, was named as executor of said will. The will was duly probated and the defendant W. C. Owen, qualified as executor. That portion of the will necessary to set out in this opinion and which has caused this law suit is as follows:

"I, W. G. Owen, of Cheatham county, Tennessee, do make and publish this my last will and testament, hereby revoking all former wills by me at any time made.

### ITEM I.

I give, devise and bequeath to my brother, John W. Owen, my homeplace in the town of Ashland City, where I now reside, described

as follows: In the first Civil District of Cheatham county, Tennessee (Boundaries omitted.) This property to be valued at five thousand dollars in the division of my estate under this my will.

ITEM 2.

All the rest and residue I give, bequeath and devise, share and share alike, to my four brothers and sister and the children of those who are dead per stirpes, to-wit: John W. Owen, one share, Frank Owen, one share, Mrs. Mary Hogan, one share, the children of J. E. Owen deceased, one share, the children of Joe Owen, deceased, one share, unto them and their heirs and assigns forever.

ITEM 3.

I direct that in the division of the residue of my property being that described in item 2 of this will, the gift of my homeplace to my brother John W. Owen shall be treated as his share to that amount, it being my intention to divide all my property equally among those set out in item 2, and that the homeplace estimated at five thousand dollars shall form the share of my brother John to that amount.

It is in the insistence of the complainants, who are brothers, nephews and nieces of the testator, that all the estate of W. G. Owen should be distributed equally in six shares according to item 2. The children of Tom Owen, a deceased brother, taking one share in addition to the five shares mentioned in item 2. It is in the insistence of the defendants that John W. Owen took the homeplace mentioned in item 1 absolutely.

W. G. Owen was unmarried, left no children. A few days before his death, John W. Owen and his wife Maggie Owen, moved into the house with W. G. Owen. John W. Owen was an invalid, he died shortly after the death of his brother, W. G. Owen. John W. Owen executed his last will and testament making his wife, Maggie, sole beneficiary under his will.

The complainants alleged that the homeplace of W. G. Owen, Ashland City, which was all his real estate, was worth $7,000. The defendants insist that it was only worth $3,500. The homeplace consists of seven and one tenth acres. It appears that W. G. Owen sold one acre out of his home tract for a school lot for $700. We are of the opinion that the real estate was reasonably worth $5,000 at the time the will was executed. There is proof tending to show that the testator thought his personal estate was worth about $25,000, but the executor only received $5,229.88. The expenses of the administration amounted to $1153.44. The Chancellor entered a decree adjudging the true intent and meaning of the will to be that it devised and bequeathed all of the testator's property, both real and personal, equally, to his sister, his two brothers living, and the children per stirpes of his three deceased brothers; and that as a means of method of effecting the equality of division intended, the testator devised to said John W. Owen his home place above described, at a valuation of five thousand dollars, thereby giving to said John W. Owen the right to elect to

take said property so valued, charged with said sum or sums as would preserve and effectuate equality of division among the shares devised and bequeathed to those above mentioned.

The decree further provided that Maggie Owen, the widow, and sole beneficiary of the will of John W. Owen, deceased, should have the right to retain said real estate at said valuation of five thousand dollars by paying to the Clerk and Master the difference between five thousand dollars and the value of her share in the estate. The decree further provided that in case she failed to elect to retain said real estate, upon the terms fixed, the Master was directed to advertise and sell same, and that the proceeds of such sale should go into the estate and be equally distributed, along with the personalty, as provided in the will.

All of the adult defendants appealed from the decree of the Chancellor, and have assigned error in this court.

The appellants have assigned eight errors, the first error is as follows:

The Chancellor erred in decreeing that the intent and effect of the testator's will was to devise and bequeath all his property, real and personal, equally to those named in item 2 and the codicil to the will, and that as a means or method of effecting equality, of the division intended, the testator devised to John W. Owen, his homeplace at a valuation of $5000, thereby giving to John W. Owen the right to elect to take said property so valued, charged with such sum as would preserve and effectuate equality of division.

This question is determinative of the appeal. Errors are assigned on that portion of the decree wherein it was provided that Maggie Owen, widow and sole beneficiary of the will of John W. Owen, should have leave to retain said real estate at said valuation of $5000, etc.

Very few classes of questions are more frequent or more perplexing in the courts than the construction of wills. Over two hundred years ago Lord Coke made the observation, which is nearly as true now as it was then, that "wills and the construction of them do more perplex a man than any other learning; and to make a certain construction of them, this excedit jurisprudentum artem", and Judge Story has said that any attempt even to classify the cases on the construction of wills, much less to harmonize them, is full of the most perilous labor.

The epigram of Sir William Jones "that no will has a brother," has been often quoted by the courts when confronted by decisions which they do not wish to follow. Two wills rarely use exactly the same language, and every will is so much a thing of itself and, generally, so unlike other wills, that it must be construed by itself as containing its own law.

The cardinal rule of testamentary construction is to ascertain the intent of the testator and give it effect, unless the testator attempts to accomplish a purpose or to make a disposition contrary to some rule of law or public policy.

The intention of a testator is to be collected from the whole will, and from a consideration of all of the provisions of the instrument, taken together, rather than from any particular form of words. The intention is not to be gathered from detached portions alone, and the court should not consider merely the particular clause of the will which is in dispute. The language employed in a single sentence is not to control as against the evident purpose and intent as shown by the whole will. In other words a will is not to be construed per parcella, but by the entirety. As sometimes expressed, the intent is to be ascertained from a full view of everything within the "four corners of the instrument." If the whole will clearly indicates what was the testator's intention, the rules of law which aid in the construction of wills need not be invoked. 28 R. C. L., p. 217: Clopton v. Hoggett, 142 Tenn., 184; Adkisson v. Adkisson, 4 Higgins, 453, 459; Armstrong v. Douglas, 5 Pickle, 223; Boyd v. Robinson, 9 Pickle, 137; East v. Burns, 184 Tenn., 181; Lynch v. Burts, 1 Heisk., 604; Hottell v. Browder, 13 Lea, 678.

When one controlling or predominant purpose of the testator is expressed, it is the duty of the court to so construe his will as to effectuate this major intention, and to construe all subsidiary clauses as to bring them into subordination. Especially is this rule applicable when equality is the primary rule of the testator. Mears v. Wharton, 5 Higgins, 329; Lewis v. Daniel, 10 Humph., 312, 314; Boone v. Lancaster, 1 Sneed, 577-9; Anderson v. McCollough, 3 Head., 615; Pritchard on Wills, sec. 389; East v. Burns, 104 Tenn., 170.

A subsequent clause in a will revokes a prior inconsistent clause. Anderson v. Lucas, 140 Tenn., 336; Henry v. Hogan, 4 Humph., 208; Vancil v. Evans, 4 Coldw., 340; Wood v. Polk, 12 Heisk., 220; Pierve v. Ridley, 1 Baxt., 145; Cobb v. Denton, 6 Baxt., 235; Pritchard on Wills, secs. 260, 397.

That construction should be adopted which disposes of the property most nearly in conformity with the statutes of descent and distribution. McDonald v. Ledford, 140 Tenn., 471, 479.

We are of the opinion that there is no error in the decree of the Chancellor. We are of the opinion that the testator intended to dispose of his property among his brothers and sister or the children of deceased brothers in six shares, that his brother John, who had moved into testator's home, should have the homeplace at a fixed sum of $5000 that would save a sale of the property but John was to share equally in all the estate with the other heirs of the testator. John received one sixth of the entire estate. The record shows that John and his wife had property of their own and it was no extra burden for

them to pay five-sixths of $5000 to clear the homeplace. Be that as it may, the clear intention of the testator was that all of his property was to be divided into six equal shares and his brother John was to have the homeplace at a fixed value of $5000.

The first assignment of error is overruled, the other assignments become immaterial, the decree of the Chancellor is affirmed, the costs of the lower court will be paid as decreed by the Chancellor, the costs of this appeal will be paid by the appellants and their surety on appeal bond. The cause will be remanded to the chancery court of Cheatham county for the purpose of carrying out the decree of the lower court and any other necessary steps or orders towards the winding up of the estate of W. G. Owen.

Heiskell and Senter, JJ., concur.