# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 17, 2012 Session

## IN RE:  ESTATE OF JACK B. HILL, JANE ANN STEFFEY, EXECUTRIX

**Appeal from the Probate Court for Loudon County**
**No. 3663     Hon. Rex A. Dale, Judge**

---

**No. E2011-01779-COA-R3-CV-FILED - JUNE 19, 2012**

---

This appeal involves a dispute over the decedent's Codicil to his Will.  The Codicil divided decedent's real property between decedent's daughter and Jeff W. Powell.  When decedent was on his death bed he asked a lawyer to prepare the Codicil, which described where certain property lines between the parties would be drawn, and the Codicil essentially gave 45 acres to decedent's daughter and 55 acres to Powell.  During the administration of the Estate, the parties employed a surveyor to survey the property lines for the purpose of preparing the respective deeds.  The surveyor determined that the description of the boundaries in the Codicil gave Powell 80 plus acres and the decedent's daughter 19 plus acres.  Essentially, the Trial Court held that the descriptions created patent ambiguities, but he also concluded that even if the ambiguities were latent, extensive governance would be required to validate the Codicil, which is not appropriate. Accordingly, he voided the Codicil altogether. Powell has appealed.  We reverse the Trial Court and hold that the decedent's intent was to give his daughter 45 acres and Powell 55 acres, and we reinstate the Codicil with directions to the Trial Court to direct the surveyor to reconfigure the boundaries to carry out the intent of the testator.


**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Probate Court Reversed and the case Remanded, with instructions.**


HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which  CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.


Donald Capparella and Candi Henry, Nashville,  Tennessee,  and Kimberlee Waterhouse, Lenoir City, Tennessee, for the appellant, Jeff W. Powell.

Terry G. Vann, Lenoir City, Tennessee, for the appellee, Hill Estate.

**OPINION**

This case originated in the Probate Court of Loudon County, and petitioner, Jane Ann Steffey, daughter of the deceased, Jack B. Hill, petitioned the Court to probate the Last Will and Testament and Codicil of Jack B. Hill, her father, who died on February 18, 2008. The Will and Codicil were admitted for probate, and she was named executrix.

The Will provides that it was executed by the testator on July 17, 2000, and gave a life estate in his real property to Polly Grubb, located at 8576 Baron Drive, Knoxville, and gives the rest of his property to his daughter, Jane Ann Steffey. The First Codicil to Last Will and Testament of Jack B. Hill states that it was executed on February 16, 2008, and it ratifies all of the terms of the Will, except that the testator makes specific bequests to Jeff W. Powell, as follows:

A. "All the currency, coins and minted silver located in safe deposit ox 1492, First National Bank of Loudon County,"

B. "Approximately 35 acres located in Loudon County Tennessee and being situated South of my home place and between the roadway to my home and the top of the ridge;"

C. "Approximately 20 acres located in Loudon County Tennessee and being situated North of my homeplace beginning at the first fence row beyond and to the north of the creek and thence to the extreme northern boundary of my property, and including a parcel of land which shall be 100 feet wide and shall extend 200 feet south beyond the creek."

The testator then stated "[i]t is my intention that with the two bequests set forth herein, there shall remain approximately 45 acres of land remaining with my home which shall be distributed pursuant to the terms of my original will to Jane Ann Steffey." The Codicil further states that if "any beneficiary attempts to dispute or contest the terms of this Codicil, it is my desire and directions that said beneficiary shall forfeit and waive all rights and benefits of my Will."

After the Will was admitted to probate, Steffey's attorney withdrew, stating that he had attempted to communicate with her but she had failed to respond. Terry Vann then became Steffey's attorney, and Steffey thereafter filed a Motion for Will Interpretation,

stating that the Will and Codicil bequeathed real property to Steffey and Jeff Powell, and that the bequests were uncertain and deficient. Steffey thus alleged that the Will was vague and ambiguous and in need of interpretation by the Court.

Powell filed a Response, stating that the testator made specific bequests to him of real and personal property, and that as part of the administration of the estate, a survey was done which showed that the acreage approximated by the testator was incorrect, such that the parties were seeking the Court's guidance in interpreting the same. Further, that he had not received all of the coins/currency from the safe deposit box that he was entitled to receive, and requested that the Court apportion the real property in accordance with Hill's intent and order that Powell receive the other personal property to which he was entitled.

The trial was held, and the testatrix was the first witness. She testified that she was the only child of Jack Hill, that her father was in the hospital when he executed the codicil, and that he died about 36 hours later. She testified that her father had cancer and it was in advanced stage, and that he was in the hospital for pain purposes. She testified that she was not present when the codicil was executed, and that Powell told her about it after it was done.

She said that her prior lawyer (Wayne Henry) told her she needed to get a survey done regarding the codicil, so she did, and that survey was entered as Exhibits 1 and 2. She testified that the survey showed her father's house, barn, and an outbuilding, and that the 25 foot ingress/egress shown was the driveway, and was the "roadway" her father referred to in the codicil.

She testified that her father had owned this farm for as long as she could remember, and that she had a good relationship with Powell, and that Powell and her father were close. She testified that after the survey, deeds were drawn up by Henry to purportedly effectuate the codicil, but she wouldn't sign them because she was only left with 20 acres.

Attorney Wayne Henry, testified that he had an office in Loudon, and had been practicing for 31 years. He testified that he knew Mr. Hill personally, and that Hill was a friend of his father's. He testified he had never done any legal work for Hill prior to February 2008, when he got a call from Powell at about 3:30 am on a Saturday morning that Hill wanted to talk to him, so he went to the hospital right away. He testified that he talked to Hill for about 2 hours, and that he got some pieces of paper so Hill could draw a picture and show him what he wanted.

Henry testified that Hill wanted Powell to get the land between the northern boundary and the first fence row, which was what he put in the codicil. He stated that Hill approximated it to be 20 acres. He testified that he drafted the codicil according to Hill's

instructions, and he testified that the drawing showed the creek at the top, and part of the fence row that crosses the creek, and had Hill's house and driveway in the middle. He testified that he circled the portion that Hill wanted Powell to have, and that the approximate acreage was 35 acres. He testified that he drew up the codicil based on what Hill told him, because they did not have time to get a survey.

Henry testified that when he was representing Ms. Steffey and Hill's estate, they had a survey done regarding the codicil, and the survey showed the larger tract for Powell as being 50.207 acres instead of 35, and that the second tract surveyed turned out to be 32.422 acres rather than 20. Henry testified that he believed that he accurately carried out Hill's intent, and showed what Hill intended for Powell to receive. He testified that he drafted the deeds consistent with the survey, but that is where the disagreement arose." Henry agreed that Hill intended for 45 acres to remain with the home and go to Steffey, and that he drafted the final paragraph of the codicil, which stated that after the bequests to Powell, Hill's intent was to leave Steffey with the home and 45 acres, which he stated was what Hill told him to do.

Stan Hinds was the next witness, and he testified that he was a licensed surveyor, and had been for 32 years, and that Powell met his surveyor in the field and helped him survey the property. Hinds testified the codicil divided Hill's property into three tracts, with 50.207 acres at the top, 19.12 in the middle, and 32.433 at the bottom.

Jeffrey Paxton was the next witness, and he testified that he did surveying for Hinds, and did this particular survey. He testified that he looked at the property, drew the line at the top of the ridge creating the 50.207 acres.

Jeffrey Powell testified that Hill was his father's cousin, but he always called him his uncle. He testified that he was close to the deceased, and that Hill talked to him about changing his will and asked him to get Mr. Henry to come to the hospital. He testified that he wasn't there when Hill signed the codicil, and testified that afterward, Hill told him that he changed his will. Powell testified that he was familiar with the land and knew where the creek was, where the first fence row past the creek was, and where the top of the ridge was. He testified that he went out there one day with the surveyor, and asked the surveyor to visibly mark the line so he would know where it was, but didn't tell him where to put it.

Powell further testified that the boundary line on the second survey was placed at the creek because he and Steffey agreed that would be easier. Powell testified that he was asking the Court to place the lines where Hill wanted them regardless of the acreage.

Following the trial, the Court entered an Order, finding that Hill died on February 18,

2008, and was survived by his daughter, Steffey. The Court held that Hill's Will gave a life estate in Hill's property on Barron Drive in Knoxville to Polly Grubb, and gave all remaining property to Steffey, as well as naming her as executrix. Further, that Hill also executed a Codicil to the Will on February 16, 2008, approximately 36 hours before his death, and that the Codicil ratified the terms of the Will, except that it gave specific bequests to Powell, including coins/currency and realty.

The Court said Powell had questioned whether he received all of the contents of the safe deposit box, but that the executrix stated he had, and Powell had no proof otherwise. The Court found that Powell had received everything he was entitled to with regard to the safe deposit box.

As to the bequests of realty, the Court found that Hill's dominant intent as expressed in his Will was to take care of his only surviving daughter, Steffey. The Court found that Steffey received all remaining property under the Will, and received the family home and 45 acres under the Codicil. The Court found that Powell was to receive 35 acres to the south of the home and 20 acres to the north of the home according to the Codicil. The Court found that the 35 acre bequest was patently ambiguous on its face, that it had no east or west boundaries, and had no width, length, or distances. The Court stated that even if it considered this a latent ambiguity, the survey "from the easement for egress and ingress from Pine Grove Providence Road south and east to the properties border is 50.207 acres, more than 15 acres over what was called for in the Codicil."

The Court said the 20 acre bequest to Powell in the Codicil was likewise patently ambiguous. The Court found there was "simply no way to determine where this 20 acre parcel would be cut out that stretches from the first fence row beyond and to the north of the creek and thence to the extreme northern boundary of Decedent's property, including a parcel of land 100 foot wide and shall extend 200 feet south beyond the creek." The Court said there was no guidance as to whether this 20 acres parcel would lie on the western boundary, the eastern boundary, or somewhere in between. The Court found that even if it considered this a latent ambiguity, the survey showed a total acreage of 32.422 acres for this parcel, even with drawing it down the center line of the creek and not the first fence row beyond and to the north of the creek.

The Court said that even if it assumed that the east and west designations were to be totally ignored and that all of the bequests to Powell be granted "on the basis of everything the Decedent owned south of the roadway leading up to his house and north of the creek would leave the Decedent's only daughter less than 20 acres with the Decedent's home, when the specific intent was that she be provided approximately 45 acres of land remaining after the two bequests". The Court found that it would also be "changing and inserting words into

the Decedent's will that are not included." The Court stated that Powell argued that the ambiguities were latent and that a hand-drawn sketch made by decedent while he was heavily medicated and in the hospital should be considered extrinsic evidence to interpret his intent.[1] The Court noted that even if the Court agreed that the ambiguities were latent, the use of such extrinsic evidence to insert additional words into the Codicil would not be proper. The Court thus struck the bequests of realty to Powell due to the patent ambiguity, and gave all of the realty to Steffey.

Powell appealed and raised this issue:

Whether the Trial Court erred in giving all the property to Steffey when Henry and the surveyors found the property description sufficient, and because a property description should prevail over a mere estimation of acreage?

Construction of wills is a question of law. *In re Estate of Milam*, 181 S.W.3d 344 (Tenn. Ct. App. 2005). Accordingly, the Trial Court's construction of Hill's codicil is reviewed *de novo* with no presumption of correctness. *Id.*

We have held that, "[t]he cardinal rule in construction of all wills is that the court shall seek to discover the intention of the testator and give effect to it unless it contravenes some rule of law or public policy." *Briggs v. Estate of Briggs*, 950 S.W.2d 710, 712 (Tenn. Ct. App. 1997). Moreover, "[t]he testator's intention is to be ascertained from the particular words used in the will itself, from the context in which those words are used, and from the general scope and purposes of the will, read in light of the surrounding and attending circumstances." *Id.* We recognize that a testator has the right to have his property disposed of according to his direction, and "must attempt to construe a will so that every word and clause contained therein is given effect." *Fransioli v. Podesta*, 134 S.W.2d 162 (Tenn. 1939); *Briggs*, at 712.

In this case, the Trial Court found that Hill's dominant intent was to take care of his only child, Steffey. But Hill also clearly intended by the codicil to bequeath land to Powell. The Trial Court, however, found the bequests to Powell in the codicil to be patently ambiguous, and basically invalidated the codicil. In so doing, the Trial Court clearly ignored the testator's intent to give some amount of land to Powell.

As this Court has previously explained:

---

[1] Extrinsic evidence may be considered as to latent ambiguities as here. Deceased was heavily medicated and died within hours of executing the Codicil. It is appropriate to construe the Codicil "in light of the surrounding and attendant circumstances". *See, Fransioli v. Podesta,* 134 S.W.2d. 162 (Tenn. 1939).

Where the language of a will is plain and unambiguous, extrinsic evidence is not admissible to vary later or contradict the terms of the will. Extrinsic evidence of the testator's intent is admissible, however, to resolve latent ambiguities. A latent ambiguity is defined as one where the equivocality of expression, or obscurity of intention does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts, without altering or adding to the written language, or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words and phrases made use of.

*Estate of Garrett*, 2001 WL 1216994 (Tenn. Ct. App. Oct. 12, 2001)(citations omitted). A latent ambiguity "does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed." *Horadam v. Stewart*, 2008 WL 4491744 (Tenn. Ct. App. Oct. 6, 2008).

In contrast, a "patent ambiguity stems from uncertainty in the language of the will itself, and is apparent on the face of the will. It involves an ambiguous term, that cannot be clarified by considering extraneous facts." *Estate of Garrett*, at f.n. 3. An example that has been often-used of a patent ambiguity is when two different prices for the same goods appear in a contract of sale creating a contradiction in the agreement that is clear on the face of it. *See Horadam*, *supra*. Thus, extrinsic evidence cannot explain the contradiction without "putting new words in the mouth of the testator". *Id.*

In this case, the Trial Court found that the codicil was patently ambiguous because the first bequest "had no east or west boundaries, and had no width, length, or distances." Likewise, the Court found the second bequest was patently ambiguous because there was "simply no way to determine where this 20 acre parcel would be cut out that stretches from the first fence row beyond and to the north of the creek and thence to the extreme northern boundary of Decedent's property, including a parcel of land 100 foot wide and shall extend 200 feet south beyond the creek." The Court said that there was no guidance as to whether this 20 acre parcel would lie on the western boundary, the eastern boundary, or somewhere in between.

The specific bequests state: "[a]pproximately 35 acres located in Loudon County Tennessee and being situated South of my home place and between the roadway to my home and the top of the ridge;" and "[a]pproximately 20 acres located in Loudon County Tennessee and being situated North of my homeplace beginning at the first fence row beyond and to the north of the creek and thence to the extreme northern boundary of my property, and including

-7-

a parcel of land which shall be 100 feet wide and shall extend 200 feet south beyond the creek."

A plain reading of these descriptions shows that they are not ambiguous on their face. Indeed, one can easily envision a tract of land extending from Hill's driveway to the "top of the ridge" at the southern end of Hill's property (which Powell, Steffey, Henry, and the surveyor all testified was easily discernible from the lay of the land), as well as a tract of land from the first fence to the north of the creek up to the northern boundary of Hill's property. There is nothing ambiguous about these descriptions.

The ambiguity arises when one looks at the acreages described by Hill and compares the same with the subsequent survey. If Hill had not mistakenly estimated the acreage on these tracts, there would have been no ambiguity. Hill had always owned this tract as a single tract of approximately 100 acres, and thus when he attempted to split it into three separate tracts and estimate the acreage, having no time for a survey, he did his best to guess at the acreage of the tracts giving them a sum of 100. Once the property was surveyed, it was clear that Hill had made a sizeable mistake in his guesses on the acreage, such that his daughter was left with less than half of what he stated he intended to give her.

This is a classic example of a latent ambiguity, because it is only with reference to the survey that the ambiguity aries.[2]  The issue becomes, what was Hill's intent?  Since the ambiguity is latent, it is proper to consider extrinsic evidence, which the Trial Court entertained in this case. The only extrinsic evidence, however, was that presented by attorney Wayne Henry, and it is less than determinative in this case.

 Henry testified that he prepared the codicil in accordance with Hill's instructions, but he also testified that Hill told him he wanted Steffey to have the homeplace with 45 acres.

We are guided by general principles of will construction recognized in Tennessee which aid in resolving this issue.  It has often been held by this Court that when there are two provisions of a will that are inconsistent, the one appearing last must prevail as it is the latest expression of the testator's intention. *See Russell v. Jackson*, 113 S.W.2d 76 (Tenn. Ct. App. 1937); *Owen v. Owen*, 8 Tenn. App. 246 (Tenn. Ct. App. 1928); *Shannon v. Green*, 1988 WL 122334 (Tenn. Ct. App. Nov. 17, 1988). It is of paramount importance to recognize that the provision regarding Hill's specific bequest to Steffey comes last in the codicil, and

---

[2]  Even if the ambiguity was patent, as the trial court found, that would only mean that the court should not consider the extrinsic evidence to construe it - it would not result in the codicil bequests being "thrown out" entirely. *See Estate of Burchfiel v. First United Meth. Church of Sevierville*, 933 S.W.2d 481 (Tenn. Ct. App. 1996); *Jacobsen v. Flathe*, 1997 WL 576339 (Tenn. Ct. App. Sept. 17, 1997).

provides as follows: "It is my intention that **with the two bequests set forth herein, there shall remain approximately 45 acres of land** remaining with my home which shall be distributed pursuant to the terms of my original will to Jane Ann Steffey." (Emphasis added). Thus, viewing the codicil as a whole, and following the rules of will construction that this provision prevails, and there can be no question that Hill intended for Steffey to still receive 45 acres with his home after the bequests to Powell. This was Hill's final word on the issue, and this is what we will enforce.

Appellant argues that, when construing a conveyance of property, a property description should always control over a description by quantity, i.e. acreage. The cases cited by appellant, however, all deal with construction of deeds and not construction of wills, as appellee points out in her Brief. In his Reply Brief, Powell cites a case dealing with will construction which he says illustrates the same point. However, a review of that case demonstrates that the opposite was ultimately held. In *Bynum v. McDowell*, 3 Tenn. App. 340 (Tenn. Ct. App. 1926), the testatrix made a conveyance to her daughter of "the large building lot on the east of my home from the east fence to the Parvin lot & back taking in all ten or fifteen acres." There was no dispute about the location of the east fence or the Parvin lot, the only dispute was whether the tract would go from the road in the front all the way to the property line at the back, which would be quite a bit more than ten or fifteen acres. *Id.* This Court stated, "[i]f she had intended that Mrs. McDowell's lot should extend to the northern boundary line of the entire tract, and had thought that the space east of the line of the hedge fence contained only ten or fifteen acres, it is not at all probable that she would have added the words 'taking in all ten or fifteen acres.' The words just quoted convey the idea of carving a parcel containing ten or fifteen acres out of a larger parcel or tract." *Id.* at 8.

The Court went on to explain that the "number of acres is sometimes the matter of description which locates and identifies the land", and that, while a party argued that the phrase "ten or fifteen acres" was too indefinite and uncertain to suffice for a description, "the general rule is, that of everything uncertain, which is granted, election remains to him to whose benefit the grant was made to make the same certain." *Id.* Thus, the Court enforced the grant of ten to fifteen acres only, to be carved out of the larger tract. *Id.*

Similarly, here, what appellant essentially argues is that the descriptions should be strictly enforced to give him some 80+ acres, and the acreage estimations placed in the codicil by Hill should be completely ignored. To do so, however, would not only violate the earlier-quoted rule of will construction that the latter provision must control, but would also completely ignore Hill's intent to leave his daughter with 45 acres. If Hill had intended for the descriptions to strictly control and that his daughter would simply be left with whatever remained, then he likely would not have tried to estimate the acreage of the respective tracts.

He did not simply state that he wanted to give Powell all property north of the creek and south of the driveway and give his daughter whatever was left. Rather, he specifically stated that his intent was, after Powell received his tracts, to leave Steffey with 45 acres surrounding his home. In order to carry out the testator's intent, we are remanding this case with instructions to the Trial Court to direct the surveyor to utilize the plats[3] which he prepared and offered into evidence and begin at the south end of the plat and within the confines of the plat survey 35 acres going north and establish a boundary line on the platted survey containing 35 acres which will become the southern boundary line between Powell and Steffey. The surveyor will be instructed to begin a survey at the north end of the plat and within the confines of the plat measure off 20 acres and establish a boundary line, being the southern end of Powell's boundary for that tract and the northern end of Steffey's boundary for her tract. This is the acreage decedent clearly intended for the two parties to receive from the Estate.

The Trial Court's Judgment is reversed and the cause is remanded with instructions to establish the boundaries in accordance with the respective acreages intended by the testator.

The cost of the appeal will be bourne one-half by Jane Ann Steffey, and one-half by Jeff E. Powell, including the cost of the surveys.

_____
HERSCHEL PICKENS FRANKS, P.J.

---

[3]The two plats properly describe 3 sides of each tract given Powell. The surveyor will only need to alter the distance on the sides of each tract, with calls and distances describing the boundary lines between Powell and Steffey on the newly established boundaries.